Crystal J. McDonough, Esq.
Wyoming Attorney No: 7-4927
**MCDONOUGH LAW GROUP**
1635 Foxtrail Drive
Loveland, CO 80538
Phone: (970) 776-3311
e-mail: crystal@mcdonoughlawgroup.com
Attorney for Defendant Salim Ali

# UNITED STATES DISTRICT COURT
# IN AND FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **NATHAN CHRISTIAN,**<br><br>Plaintiff,<br><br>~ *versus* ~<br><br>**LOYAKK, INC,** *et al.*<br><br>Defendants. | Case No. 1:22-cv-215<br><br>**MEMORANDUM OF LAW IN SUPPORT** *of* **DEFENDANT SALIM ALI'S MOTION TO DISMISS THE COMPLAINT** |

## **Table of Contents**

A.      Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

B.      Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

C.      Procedural and Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

D.      Argument:

     i.      This Court has no Personal Jurisdiction
        Over Defendant Ali . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     ii.     This Court has no Subject Matter Jurisdiction over the Dispute
        because the Amount in Dispute is less than $75,000.00 . . . . . . . . . . . . . . . . 13

     iii.    This Court has no Subject Matter Jurisdiction
        over the Dispute because it requires intervention
        with the internal affairs of foreign Corporations . . . . . . . . . . . . . . . . . . . . . 17

     iv.     There are no Plausible or Non-Conclusory
        Allegations that Support Piercing the Corporate Veil
        and Imposing Personal Liability on Defendant Ali . . . . . . . . . . . . . . . . . . . . 19

     v.      The Causes of Action are Not Plead Against Defendant Ali . . . . . . . . . . . . 21

     vi.     Additional Considerations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

E.      Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

A.      **Table of Authorities**

**Cases**

ARW Expl. Corp. v. Aguirre,
        45 F.3d 1455 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Bell Atlantic Corp. v. Twombly,
        550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Calder v. Jones,
        465 U.S. 783 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CFTC v. McDonnell,
        332 F.Supp. 3d 641 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

CFTC v. Reynolds,
        Case No. 19-cv-5631, 2021 U.S. LEXIS 38896
        (S.D.N.Y. March 2, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

Choq, LLC v. Holistic Healing, LLC,
        Case No. 20-cv-404-NDF, 2020 U.S. Dist. LEXIS 247692
        (D.Wy. July 28, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Codos v. National Diagnostic Corp.,
        711 F.Supp. 75 (E.D.N.Y. May 25, 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Cunningham v. ASI, LLC,
        Case No. 18-cv-183-F, 2019 U.S. Dist. LEXIS 202441
        (D.Wy. Jan. 9, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Diamond Fortress Techs., Inc. v. EverID, Inc.,
        274 A.3d 287 (Sup.Ct. Delaware New Castle Apr. 14, 2022) . . . . . . . . . . . . . . . . . . . 14

Dudnikov v. Chalk v. Vermillion Fine Arts,
        514 F.3d 1063 (10th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fox v. F & J Gattozi Corp.,
        672 N.E.2d 547 (Mass.App.Ct. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Gas Sensing Tech. Corp. v. New Horizon Ventures Ply Ltd. at Tr. of Linklater Family Tr.,
        471 P.3d 494 (Wyo. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Gramercy Distressed Opportunity Fund II, L.P. v. Bakhmatyuk,
Case No. 21-cv-223, 2022 U.S. Dist. LEXIS 170787
(D.Wy. Sept. 15, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Grynberg v. Koch Gateway Pipeline Co.,
390 F.3d 1276 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Handley v. La Melza,
Case No. 22-cv-797, 2022 U.S. Dist. LEXIS 155383
(C.D.Cal. Feb. 15, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

Hodges v. Harrison,
372 F.Supp. 3d 1342 (S.D.Fla. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Howard v. Aspen Way Enterprises, Inc.,
406 P.3d 1271 (Wyo. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Intercon Inc. v. Bell Atl. Internet Solutions, Inc.,
205 F.3d 1244 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Kaazar Capital Partners, Ltd. v. Bactrac Tech., LLC,
Case 17-cv-2721, 2019 U.S. Dist. LEXIS 246245
(N.D.Ga. Nov. 1, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Keeton v. Hustler Mag. Inc.,
465 U.S. 770 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Koster v. (American) Lumbermens Mutual Casualty Co.,
330 U.S. 518 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Martel v. Hall Oil Co.,
36 Wyo. 166 (1927) . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . 13-14

Old Republic Ins. Co. v. Cont'l Motors, Inc.,
877 F.3d 895 (10th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Omni Holdings v. Royal Ins. Co. of Canada,
149 F.3d 1086 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

PPEX, LLC v. Buttonwood, Inc.,
Case No. 21-cv-53-F, 2021 U.S. Dist. LEXIS 254567
(D.Wy. July 13, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Quest Holco, LLC v. Scott Bushkie & Cornerstone Bus. Servs.,
  Case No. 21-cv-0051, 2021 U.S. Dist. LEXIS 255388
  (D.Wyo. July 19, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Ridgerunner LLC v. Meisnger,
  2013 Wy 31 (Wyo. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Rogers v. Guaranty Trust Co.,
  288 U.S. 123 (1933) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18

Roussalis v. Apollo Elec. Co.,
  979 P.2d 493 (Wyo. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Smith v. Griffith,
  3 Hill 333 (N.Y. Sup.Ct. of Judicature 1842) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Tal v. Hogan,
  453 F.3d 1244 (10th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Ten Mile Indus. Park v. W. Plains Serv. Corp.,
  810 F.2d 1518 (10th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Virgin Entertainment Ltd. v. Virginic LLC,
  Case No. 19-cv-220-F, 2020 U.S. Dist. LEXIS 267175
  (D.Wyo. Apr. 1, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

Weiss v. Routh,
  149 F.2d 193 (2d Cir. 1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Wenz v. Memery Crystal,
  55 F.3d 1503 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Statutes and Other Authority**

1 FLETCHER CYC. CORP. § 25 (Sept. 2021 update) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

2d RESTATEMENTS OF TORTS § 876 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

27A FED.PRO. L.ED. § 62:520 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

28 U.S.C. § 1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Connecticut's Mulberry Craze,
  CONNECTICUT HISTORY (Aug. 30, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Federal Rules of Civil Procedures, Rule 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Ethereum, WIKIPEDIA THE FREE ENCYCLOPEDIA available
    (last checked November 13, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

The Oil Business in Wyoming,
    WYOMING STATE HISTORICAL SOCIETY (Nov. 8, 2014) . . . . . . . . . . . . . . . . . . . . . . 13

UNITED KINGDOM COMPANIES ACT § 1032(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

WYO. STAT. ANN. § 5-1-107 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

WYO. STAT. ANN. § 8-1-101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

B.    **Introduction**

The Complaint seeks the wrong relief, from the wrong party, before the wrong Court.  As it relates to Defendant Salim Ali, it must be dismissed and with prejudice

**This case was filed in the wrong Court**

This Court has no personal jurisdiction over Defendant Salim Ali. By the Complaint's own description, Defendant Ali's business address is in California and the Affidavit of Defendant Ali (Affidavit in Support at **Exhibit C**), shows undisputed evidence that Ali is a resident of California who has never been in Wyoming, never agreed to subject himself to jurisdiction in Wyoming, and never directed any conduct at Wyoming.

This Court has no subject matter jurisdiction over the dispute described in the Complaint because the matter in controversy does not exceed the value of $75,000.00.   Assessing the highest daily closing value of the assets in question for three months following the alleged breach, brings the amount in dispute to just over $25,000.00.

Further, this Honorable Court has no subject matter jurisdiction over the dispute described in the Complaint because a court sitting in Wyoming must decline to interfere with the internal management, corporate dissolution, creditor relations, and determination of the corporate status of corporations organized under United Kingdom and California law.

**This case was filed against the wrong Defendant.**

The Complaint alleges that Loyakk, Ltd breached the payment provisions of their Advisor Agreement with the Plaintiff.  Nothing in the Complaint plausibly alleges that Defendant Ali had such unity of interest and ownership with the corporate Defendants that the individuality, or separateness, of the corporate Defendants had ceased, and that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances,

sanction a fraud or promote injustice.  Simply put, if any damages were suffered, the Complaint does not plausibly allege that such damages were Defendant Ali's fault or that there is any basis to pierce the corporate veil and impose personal liability on Defendant Ali.

In addition, the Plaintiff's Complaint fails to name necessary parties as Defendants without which it would not be possible to obtain complete relief and fully resolve this dispute.

**This case was filed for the wrong claims.**

The Complaint on its face fails to allege any cause of action against Defendant Ali.  In addition, the duplicative claims all arise from the written terms of the purported contract and the claims for Breach of Covenant of Good Faith and Fair Dealing, Unjust Enrichment, Quantum Meruit and Negligence and therefore must be dismissed.  In addition, the claims are untimely.

In Summary: There is no personal jurisdiction over Defendant Ali and no subject matter jurisdiction over the Plaintiff's claims against him.  The Complaint makes no allegations sufficient to pierce the corporate veil and impose personal liability on Defendant Ali for alleged missteps by other parties.  And the Complaint on its face fails to make any claim against Defendant Ali.

For these reasons Defendant Ali respectfully submits that the Complaint must be dismissed as against him and with prejudice.

## C.      Procedural and Factual Background

A true, accurate and complete copy of the Complaint is annexed to the Affidavit in Support at **Exhibit A** and is referred to in this Memorandum as the "**Compl.**" or "**Complaint**."  Defendant Ali is referred to as the "**Defendant**" or as "**Ali**."  On this Motion to Dismiss and for the purposes of argument, we "accept[] as true all factual allegations contained in the complaint," *See, e.g.*,

Choq, LLC v. Holistic Healing, LLC, Case No. 20-cv-404-NDF, 2020 U.S. Dist. LEXIS 247692 (D.Wy. July 28, 2020) *citing* Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).[1]

The Complaint alleges that on April 14, 2018, the Plaintiff entered into a "Strategic Advisor/Consultancy Services Agreement" with a British company named Loyakk Ltd, Compl. at ¶ 17 and Exh. 5. A copy of the Strategic Advisor/Consultancy Services Agreement is annexed as **Exhibit B** to the Affidavit in Support and is referred to here as the "Agreement". Under the terms of the Agreement, Plaintiff was entitled to 10 Ether ("Ξ")[2] within three business days after the pre-ICO ended; 100Ξ within three business days after the ICO; and 0.5% of Loyakk's total crypto-token float when the ICO ended. Compl. at ¶ 18 and Exhibit B.

The Complaint alleges that the Plaintiff fulfilled all his responsibilities under the contract, Compl. ¶¶ 21-27, and that the contract was not terminated until October 14, 2018. Compl. ¶ 28.

The Complaint alleges that the Pre-ICO sale ended on June 14, 2018, Compl. ¶ 20, and that the ICO concluded on October 31, 2018. Plaintiff alleges that Loyakk Ltd. failed to pay Plaintiff. Comp. ¶¶ 30-32, 49.

The Complaint then describes the process by which Loyakk, Ltd., was allegedly "struck off" the ledger of Companies. Compl. ¶¶34-45. This description includes wild flights of fancy including the Plaintiff's "logical inference" about what notice a host of various individuals may be required to do under United Kingdom law to provide notice to creditors. Compl. ¶ 39.

---

[1] For the avoidance of doubt, the adoption of the factual claims as alleged by the Plaintiff in this Procedural and Factual Background section and this Brief in general is *not* an admission by Defendant Ali to any allegation in the Complaint. Should it be necessary to Answer the Complaint, the Defendant will respond accordingly to the factual claims in the Complaint.

[2] *See* Ethereum, WIKIPEDIA THE FREE ENCYCLOPEDIA available at <https://en.wikipedia.org/wiki/Ethereum> (last checked November 3, 2022).

Plaintiff cites this history to illustrate the "dubiousness" of Loyakk's internal management, Compl. ¶ 43, and to call for the Court to re-visit the corporate status of Loyakk, Ltd.

The Complaint engages in rank speculation and lists conclusory allegations about Defendant Ali's role with the corporate defendants, Compl. ¶ 48.

As for the Causes of Action, the Complaint alleges that Ali is liable for either breaching the Advisor Agreement himself, or in the alternative, liable for aiding and abetting Loyakk Ltd.'s alleged breach of the Advisor Agreement. Compl. ¶¶ 50-56.  The Complaint alleges that Ali breached a covenant of good faith and fair dealing with the Plaintiff, or in the alternative, is liable for aiding and abetting Loyakk Ltd.' s breach of the covenant of good faith and fair dealing. Compl. ¶¶ 57-63.

The Complaint alleges two additional equitable theories, Compl. ¶¶ 64-70, and also asks this Court to revisit the process by which Loyakk Ltd. was dissolved under United Kingdom procedure and law.  Compl. ¶¶ 71-77.

The Complaint seeks about two hundred thousand dollars in damages based on the "fluctuating price of Ether."  Compl. ¶ 56.

**D.**     **Argument**

      **i.**     **This Court has no Personal Jurisdiction over Defendant Ali**

"The law of the forum state and constitutional due process limitations govern personal jurisdiction in federal court."  Old Republic Ins. Co. v. Cont'l Motors, Inc., 877 F.3d 895, 903 (10th Cir. 2017) citing Intercon Inc. v. Bell Atl. Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000).  Wyoming's long-arm statute allows jurisdiction to be exercised consistent with and to the extent allowed under the United States constitution. WYO. STAT. ANN. § 5-1-107.

The 10th Circuit has summarized the requirements for there to be minimum contacts sufficient to obtain specific personal jurisdiction over a foreign resident Defendant.  Such contacts must include:

> "(a) an intentional action . . . , that was
>
> "(b) expressly aimed at the forum state . . . , with
>
> "(c) knowledge that the brunt of the injury would be felt in the forum state."

Dudnikov v. Chalk v. Vermillion Fine Arts, 514 F.3d 1063, 1072 (10th Cir. 2008) (applying Calder v. Jones, 465 U.S. 783 (1984)).

And to be clear, when we talk about specific jurisdiction over the "Defendant," it means that each Defendant must be assessed individually.  Whatever the status of the Wyoming jurisdiction clause in the Advisor Agreement between the Plaintiff and Loyakk Ltd., the Plaintiff has the burden to make an individualized showing that *Defendant Ali himself* directed his conduct at this State.  This Court wrote: "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employe[d] him . . . Each [D]efendant's contacts with the forum State must be assessed individually."  PPEX, LLC v. Buttonwood, Inc., Case No. 21-cv-53-F, 2021 U.S. Dist. LEXIS 254567 (D. Wy. July 13, 2021) (Freudenthal, District Judge Nancy D.) *citing* Keeton v. Hustler Mag. Inc., 465 U.S. 770, 781, n. 13 (1984); Calder, Id., at 465 U.S. at 790 (1984)).

Similarly, in Cunningham v. ASI, LLC, Case No. 18-cv-183-F, 2019 U.S. Dist. LEXIS 202441 (D.Wy. Jan. 9, 2019) (Freudenthal, District Judge Nancy D.) this Court found that since a Defendant did not direct their conduct at Wyoming, there was no jurisdiction over them despite the counterparty being a Wyoming Company.

Defendant Ali respectfully submits that as applied here, this Court has no personal jurisdiction over Defendant Ali and the Complaint must be dismissed.  Here's why:

The Complaint alleges that Defendant Ali's business address is in California. Compl. ¶ 5. The Affidavit by Ali (Affidavit in Support at Exhibit C) confirms that Mr. Ali has never visited Wyoming, never agreed to subject himself to jurisdiction in Wyoming, and never directed any conduct at Wyoming.  Therefore, there is no general jurisdiction over Defendant Ali.

In terms of specific jurisdiction, as noted above, the Plaintiff has the burden of substantiating personal jurisdiction over Defendant Ali. Omni Holdings v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998).  The Complaint on its face does not even make a "*prima facie* showing that jurisdiction exists." Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995).

The sole allegation about Defendant Ali's wrongdoing as it relates to the cause of action for Breach of Contract (and Breach of Implied Covenant of Good Faith and Fair Dealing) is the conclusory statement that Ali "aided and abetted Loyakk U.K.'s breaches through their wrongful conduct."  Compl. ¶ 55, 62.  Where did that happen?  When?  And how?  That lacunae are not an accident, but reflect that there are no and can be no allegations about conduct by Defendant Ali that was directed *at Wyoming* sufficient to establish specific personal jurisdiction over him.

To the extent that the aiding and abetting claim is based either on a piercing the corporate veil theory (addressed separately below) or on the alleged mismanagement of Loyakk, Ltd – neither of those theories describe activities by Defendant Ali directed at Wyoming. In fact the sole actual allegations about Defendant Ali's conduct is his alleged participation in the winding down of Loyakk U.K., Compl. ¶ 48, and Loyakk Ltd., Compl. ¶ 47.  This alleged behavior occurred in California and was directed at a corporate registrar in the United Kingdom.

For these reasons, Defendant Ali respectfully submits that this Court has no personal jurisdiction over him.  Therefore, the Complaint as against him must be dismissed.

### ii.   This Court has no Subject Matter Jurisdiction over the Dispute because the Amount in Dispute is less than $75,000.00

The Complaint itself makes no allegation about the basis for subject matter jurisdiction in this Honorable Court.  The Civil Cover Sheet does have a mark by the box identified as "Diversity." That appears to reference 28 U.S.C. § 1332, which provides this Court has jurisdiction over all civil actions where the sum in controversy exceeds the sum of $75,000.00.  For purposes of this Memorandum of Law, we will assume that is the basis for jurisdiction; and to the extent that any other basis for jurisdiction is presented in opposition, we respectfully reserve the right to address that argument when made.

How much is in controversy here?

Plaintiff alleges that "[w]hile the exact total of Mr. Christian's outstanding damages cannot be specifically defined as it depends, in part, on the fluctuating price of Ether and the float of Loyakk U.K.'s tokens, these damages total at least $198,700[.00] U[nited ]S[tates ]D[dollars]" Compl. ¶ 56.  It is not entirely clear how Plaintiff arrived at that number, but it appears to be based on the valuation of Ξ as of August 31, 2022.  *See* Compl. ¶ 30, fn. 5.

This is not the first time that Wyoming courts have had to deal with contracts gone wrong in a volatile and fluctuating market.  During the 1920s oil boom in Wyoming, the Court faced similar situations, *See e.g.*, The Oil Business in Wyoming, WYOMING STATE HISTORICAL SOCIETY (Nov. 8, 2014) available online at <https://www.wyohistory.org/encyclopedia/oil-business-wyoming> (describing "the early 1920s [as] the heyday of Wyoming oil production and refining").

In Martel v. Hall Oil Co., 36 Wyo. 166, 179 (1927), a plaintiff sued to recover damages against an oil company for illegally drilling an oil well on plaintiff's property.  An issue considered

by the Wyoming Supreme Court was how to value the plaintiff's rights on a fluctuating and highly-speculative mineral asset.  As Chief Justice Fred H. Blume put the question in assessing, "does such speculative value furnish any basis for damages in favor of plaintiffs?"  Martel, *Id*.

The Wyoming Supreme Court approved of the "New York rule" and cited Smith v. Griffith, 3 Hill 333 (N.Y. Sup.Ct. of Judicature 1842).  Smith addressed damage to Alpine mulberry trees that had "been ascertained to be of no intrinsic value"; however at the height of the mid-19th Century "Mulberry Craze", *See* Connecticut's Mulberry Craze, CONNECTICUT HISTORY (Aug. 30, 2020) *available online at* < https://connecticuthistory.org/connecticuts-mulberry-craze/> the damage caused by non-delivery could be substantial if a seller missed the market when at its height. New York's highest court adopted the rule – followed by Martel – that in assessing damages courts look at the value of the asset *at the time of the breach*.  With a volatile asset, the valuation of damages is based on the "range of the entire market and the average of prices thus found, running through a reasonable period of time." Martel, *Id.* at 180 quoting Smith.

Earlier this year, under strikingly similar allegations to those in this case, Judge Paul R. Wallace in Delaware applied the same "New York rule" to determine the valuation of cryptocurrency.  The Court relied on the highest intermediate value within three months of the breach as shown on CoinMarketCap.com to value the damages for failure to deliver cryptocurrency, *See* Diamond Fortress Techs., Inc. v. EverID, Inc., 274 A.3d 287 (Sup.Ct. Delaware New Castle Apr. 14, 2022)(Wallace, Judge Paul R.).  The approach of the Diamond Fortress Techs. court is a great illustration of how to apply the "New York rule" to cryptocurrency. It is well suited for valuating the damages in this case.

We turn to coinmarketcap.com for the three months following the alleged breaches on June 14 and October 31, 2018, to value the damages alleged in the Complaint.

With respect to the 10Ξ that was to be delivered on June 14, 2018, the highest price reached was $540.04 on June 21, 2018.



Illustration 1 – Zoom in of the highest Ξ price in the three months following June 14, 2018

The full context of the snapshot shown above is annexed as **Exhibit D**, which is a true, accurate and complete screenshot of CoinMarketCap.com taken on November 13, 2022; with the chart showing the valuation of Ξ between June 14, 2018 through October 14, 2018.  Courts across the country have held that CoinMarketCap historic charts are an objective and reliable basis to determine the price of Cryptocurrency at a specific time and can be independently verified.  *See* Diamond Fortress Techs., *Id.* 274 A.3d at 305, fn. 133, *citing* CFTC v. McDonnell, 332 F.Supp. 3d 641, 670-71 (2018); CFTC v. Reynolds, Case No. 19-cv-5631, 2021 U.S. LEXIS 38896 (S.D.N.Y. March 2, 2021)("CoinMarketCap is a reliable valuation tool"); *and* Hodges v. Harrison, 372 F.Supp. 3d 1342, 1353, n. 1 (S.D.Fla. 2019).  *See also* Handley v. La Melza, Case No. 22-cv-797, 2022 U.S. Dist. LEXIS 155383 at *11 (C.D.Cal. Feb. 15, 2022).

Further, we respectfully submit that the valuation of Ξ in from June 14 – October 14, 2018, shown at CoinMarketCap are "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment."  Tal v. Hogan, 453 F.3d 1244, 1265 at fn. 24 (10th Cir. 2006) *citing* Grynberg v. Koch Gateway Pipeline Co., 390 F.3d 1276, 1278 fn. 1 (10th Cir. 2004); 27A FED.PRO. L.ED. § 62:520 (2003).

With respect to the 100Ξ that was to be delivered on or before November 2, 2022, *See* Compl. at ¶30, the highest price reached was $220.09 on November 7, 2018.



Illustration 2 – Zoom in of the highest Ξ price in the three months following November 2, 2018

The full context of the snapshot shown above is annexed as Exhibit E, which is a true, accurate and complete screenshot of CoinMarketCap.com taken on November 13, 2022; with the chart showing the valuation of Ξ between November 2, 2018 through February 2, 2019.

In summary:

| Amount Allegedly Due | Date | Highest Valuation of Ξ within three months | Value of Damages |
|---|---|---|---|
| 10Ξ | June 14, 2018 | $540.24 | $5,402.40 |
| 100Ξ | November 2, 2018 | $220.09 | $22,009.00 |
| | | **Total:** | $27,411.40 |

Even giving the Plaintiff every benefit of the doubt, at most the Complaint on its face alleges damages in the amount of $27,517.60 (and in fact it is significantly lower if you use an intermediate average of prices rather than the highest value, as calculated above).

In summary: Since as a matter of law, the amount in dispute is less than $75,000.00, this Court has no subject matter over the dispute and the Complaint must be dismissed as against Defendant Ali.

### iii.    This Court has no Subject Matter Jurisdiction over the Dispute because it requires intervention with the internal affairs of foreign Corporations

Further, as described above, the Complaint's theory to impose aiding and abetting liability on Defendant Ali for the alleged breach of contracts by Loyakk Ltd. arises from the alleged corporate dissolution process in 2019.  The Complaint at ¶¶ 33-45 contains discussion of the practices of "Companies House" (the UK Corporate registration system) and the "rights of the English Crown" upon dissolution.  The Complaint speculates about "logical inferences" to be made about the notice requirements under United Kingdom law, and how the U.K. Companies House dissolution process may have failed to protect due process rights of creditors under American law. Compl. ¶ 40.

However, framed, all of the piercing corporate veil arguments, the aiding and abetting claims, the negligence claims, and all claims other than direct breach of contract claims against Loyakk Ltd. itself will *necessarily* require this Court to serve as an overseer of the corporate dissolution process of a United Kingdom Corporation and to second-guess the actions taken by Companies House in 2019.

Whether framed as a discretionary matter of *forum non conveniens*, or a lack of subject matter jurisdiction[3] – it is simply the case that "[i]t has long been settled doctrine that a court – state or federal – sitting in one State will as a general rule decline to interfere with or control by injunction or otherwise the management of the internal affairs of a corporation organized under

---

[3]    *Compare* Koster v. (American) Lumbermens Mutual Casualty Co., 330 U.S. 518 (1947) describing the foreign corporation non-interference rule as an application of the doctrine of *forum non conveniens*; with Codos v. National Diagnostic Corp., 711 F.Supp. 75 (E.D.N.Y. May 25, 1989) which cites Weiss v. Routh, 149 F.2d 193, 196 (2d Cir. 1945) for the proposition that federal dissolution actions are *inherently* not within the jurisdiction of federal courts.

the laws of another State but will leave controversies as to such matters to the courts of the State of the domicile." Rogers v. Guaranty Trust Co., 288 U.S. 123, 130 (1933).

There are no claims against Defendant Ali that can be teased apart from the underlying issues related to the corporate status of Loyakk Ltd.  As alleged, the Causes of Action will require this Court to decide on the validity of the dissolution by Companies House, the current status of Loyakk Ltd., and even the status of the Corporation in the future if it is restored. See Kaazar Capital Partners, Ltd. v. Bactrac Tech., LLC, Case 17-cv-2721, 2019 U.S. Dist. LEXIS 246245 at *7 (N.D.Ga. Nov. 1, 2019)(describing how under United Kingdom law, a struck-off company may apply for restoration and "[t]he general effect of restoration to the register by court order is that the company is considered to have continued in existence as if it had not been struck off the register or dissolved.") citing UNITED KINGDOM COMPANIES ACT § 1032(1).

As an illustration of the chaos that would ensue – and the basis for the "settled doctrine" that federal courts do not address the management of foreign corporations – is the following hypothetical.   Let's consider a scenario where this Court issues a Decision that finds Loyakk Ltd. was improperly dissolved and/or that the Plaintiff is a valid creditor entitled to collect from the Directors personally; meanwhile across the pond a United Kingdom magistrate granted an application for restoration and rules that Loyakk Ltd. continued in its legal existence and/or that the creditors' rights were properly protected during the 2019 dissolution.   What should the management of Loyakk Ltd. do when facing conflicting Court Orders?  Should they comply with the direction of a local United Kingdom Magistrate or follow the decision of a District Judge sitting thousands of miles away?

Defendant Ali respectfully submits that because the claims against Defendant Ali necessarily require that this Court make factual determinations and legal judgements about the

corporate dissolution process in the United Kingdom, it is the "settled doctrine" that this Court refrain from taking on the case either on *forum non conveniens* grounds or because it lacks subject matter jurisdiction to dissolve, restore, arrange for creditor rights or otherwise administer the winding up of the United Kingdom.

For these reasons we respectfully submit that the Complaint should be Dismissed because this Honorable Court has no role in re-visiting the dissolution of the Loyakk Ltd., with Companies House and the claims against Defendant Ali will necessarily require that this Court serve in an appellate role to the actions by the foreign corporate registrar.

### iv.   There are no Plausible or Non-Conclusory Allegations that Support Piercing the Corporate Veil and Imposing Personal Liability on Defendant Ali

This Honorable Court has made it clear:

> "It is black-letter American law that corporate entities are legally distinct from their individual owners, officers and directors."

Gramercy Distressed Opportunity Fund II, L.P. v. Bakhmatyuk, Case No. 21-cv-223, 2022 U.S. Dist. LEXIS 170787 (D.Wy. Sept. 15, 2022)(Freudenthal, District Judge Nancy D.) *citing* 1 FLETCHER CYC. CORP. § 25 (Sept. 2021 update); Ridgerunner LLC v. Meisnger, 2013 Wy. 31 (Wyo. 2013); ARW Expl. Corp. v. Aguirre, 45 F.3d 1455 (10th Cir. 1995).

This Court would only pierce the corporate veil to impose personal liability on the officers and directors if:

> "the corporation [w]as not only influenced and governed by that person, but that there is such a unity of interest and ownership that the individuality, or separateness, of such person and corporation has ceased, and that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice."

Virgin Entertainment Ltd. v. Virginic LLC, Case No. 19-cv-220-F, 2020 U.S. Dist. LEXIS 267175 (D.Wyo. Apr. 1, 2020)(Freudenthal, District Judge Nancy D.) *citing* Energy Drilling, LLC v. Virtus Oil & Gas Corp., No. 16-cv-0040-F, 2016 WL 9450461 (D.Wyo. Apr. 15, 2016)(Freudenthal, District Judge Nancy D.); Ten Mile Indus. Park v. W. Plains Serv. Corp., 810 F.2d 1518 (10th Cir. 1987).

The non-conclusory allegations in the Complaint all contradict any piercing-the-corporate-veil theory.

As alleged in the Complaint: "In Spring 2018, Ali [] contacted [Plaintiff to seek] his guidance, advisement, reputation, and labor *to help develop and advance Loyakk's cryptocurrency-based business ventures*..." Compl. ¶ 14 (emphasis added). Rather than indicating unity, this allegation clarifies that from the get-go the parties always understood Loyakk to be an independent entity. When things went awry, the Complaint alleges that Ali spoke with the Plaintiff by phone about "how their relationship would proceed further in the context of the Advisor Contract". Compl. ¶ 23. The services provided by Plaintiff – both those contracted for and those that "went far above and beyond what was asked of him in the Advisor Contract" – were to benefit Loyakk. ¶¶ 26-27.

As alleged explicitly in the Complaint, "On December 7, 2018, at a meeting more than a month after the contract had expired, Ali and Quasim, *on behalf of Loyakk U.K.*, indicated that there was an issue with upholding Loyakk U.K.'s end of the deal to pay him in exchange for services rendered." "The conversation ended Ali and Quasim *on behalf of Loyakk U.K.*, promising to pay [Plaintiff] in the near future". ¶ 32 (emphasis added)

Rather than evincing that the individually or separateness had ceased, the Complaint alleges and the record shows that all negotiations and alleged failure to perform was done by

Loyakk U.K. and not by Messrs. Ali and Quasim personally.  The discussion about the United Kingdom dissolution process that took place long after the alleged breach, Compl. ¶¶ 34-49, is irrelevant to establishing that there was no separate corporate existence.  If anything, it reinforces the distance between Defendant Ali personally and the alleged actions by the United Kingdom Corporation.

For these reasons, we respectfully submit that since the Complaint has not even made a *prima facie* claim to pierce the corporate veil and impose the alleged liabilities of Loyakk Ltd., on any other party, let alone Defendant Ali, the Complaint as against Defendant Ali must be dismissed and with prejudice and without leave to Amend.

### v.     The Causes of Action are Not Plead Against Defendant Ali

The First Cause of Action seeks to impose liability on Defendant Ali for Breach of Contract; and, in the alternative, for aiding and abetting the breach of contract allegedly committed by Loyakk U.K. Compl. ¶¶ 50-56.  A similar theory is set forth to impose aiding and abetting liability for Breach of Implied Covenant of Good Faith and Fair Dealing. Compl. ¶¶ 57-63.

As an initial matter, we would emphasize that the discussion above about piercing the corporate veil forecloses any direct claim against Defendant Ali; and the theory of "aiding and abetting" cannot and should not be allowed to move forward on an alternate theory to piercing the corporate veil.  For these reasons, we respectfully submit that neither of these causes of action are properly pled against Defendant Ali.

But accepting for the sake of argument that the Court does not see it that way, and accepting for the sake of argument that Wyoming recognizes a distinct cause of action for aiding and abetting

Breach of Contract (and Breach of Implied Covenant of Good Faith and Fair Dealing),[4] the Complaint does not allege a cause of action.

Wyoming courts fall back on "common law" when assessing aiding and abetting claims, *See* Quest Holco, LLC v. Scott Bushkie & Cornerstone Bus. Servs., Case No. 21-cv-0051, 2021 U.S. Dist. LEXIS 255388 *9 (D.Wyo. July 19, 2021), *citing* WYO. STAT. ANN. § 8-1-101; Howard v. Aspen Way Enterprises, Inc., 406 P.3d 1271 (Wyo. 2017).

Using the Restatement – often cited by courts which uphold aiding and abetting claims – as a model shows that there are three ways to allege aiding and abetting liability under the common law.  There must be allegations that the defendant:

> "(a)    [did] a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b)    [knew] that the other's conduct constitute[d] a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c)    [gave] substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person."
>
> 2d RESTATEMENTS OF TORTS § 876

---

[4]    *See* Quest Holco, LLC v. Scott Bushkie & Cornerstone Bus. Servs., Case No. 21-cv-0051, 2021 U.S. Dist. LEXIS 255388 *9 (D.Wyo. July 19, 2021) *citing* Gas Sensing Tech. Corp. v. New Horizon Ventures Ply Ltd. at Tr. of Linklater Family Tr., 471 P.3d 494, 298 (Wyo. 2020)(recognizing aiding and abetting claims under Wyoming law without defining which torts it applies to, and the elements of such claims).

For the avoidance of doubt, it is the position of Defendant Ali that an aiding and abetting claim that seeks to circumvent a failed piercing the corporate veil theory cannot be plead; nor that there is any claim for aiding or abetting Breach of Contract (or Breach of Implied Covenant of Good Faith and Fair Dealing) under Wyoming law.  The discussion here is presented *arguendo*.

Plainly the alleged failure to pay was done by Loyakk Ltd., and Defendant Ali did not commit the tort themselves.  There is no allegation that Defendant Ali knew that there was a breach of duty or gave substantial assistance toward the alleged breach.  To the contrary – the Complaint alleges that *after the breach*, Defendant Ali committed "on behalf of Loyakk U.K." to make Plaintiff whole. Compl. ¶ 32.  And the Complaint does not and cannot allege that Defendant Ali (who according to the Complaint managed a partner company overseas in the United States, and was involved in discussions) provided "substantial assistance" or through his own conduct, separately engaged in actions that "constitute[d] a breach of duty [to Plaintiff]."

For these reasons, we respectfully submit that the first two causes of action must be dismissed as against Defendant Ali and with prejudice.

The Third and Fourth Causes of Action are equitable claims.  Under Wyoming law, a duplicative claim for equitable claims can only move forward, "[I]f a Plaintiff can present evidence of distinct, separate losses under an equity or tort theory sufficient to justify recovery beyond breach of contract, then it should be entitled to make a recovery so long as it is not duplicative or cumulative in nature." <u>Roussalis v. Apollo Elec. Co.</u>, 979 P.2d 493, 496 (Wyo. 1999) *citing* <u>Fox v. F & J Gattozi Corp.</u>, 672 N.E.2d 547 (Mass.App.Ct. 1996).

The Complaint's equitable causes of action arise out of the same factual allegations and seeks the same "$198,700 in promised compensation." Compl. ¶ 67, 70.

Therefore, no independent cause of action for unjust enrichment or quantum meruit can move forward against Defendant Ali.  The claims against him must stand or fall on whether there is a valid claim for Breach of Contract.

The final cause of action for Negligence embodies all the same issues of the other Causes of Action.  It is duplicative of the Breach of Contract claim; it fails to establish any basis to pierce

the corporate veil, it does not allege any basis to impose aiding and abetting liability, or cannot establish any other basis to hold Defendant Ali personally liable for alleged wrongdoing by Loyakk Ltd.

For these reasons, Defendant Ali respectfully submits that the Plaintiff has failed to plead any cause of action against Defendant Ali and therefore the Complaint must be dismissed against him and with prejudice without leave to Amend.

### vi.    Additional Considerations

Even assuming the Court were to find that it has jurisdiction over Defendant Ali; and even assuming the Court were to find that it has jurisdiction over the dispute (despite there being less than $75,000.00 in dispute, and despite there being no jurisdiction to second guess Companies House); and even if the Court were to find that the Complaint can pierce the corporate veil and finds that the Complaint has plausibly alleged causes of action against Defendant Ali – the Court should still dismiss the Complaint for the following reasons:

The causes of action are subject to laches.  The Plaintiff cannot lay in wait for years; and then surprise the Defendants at a time of their choosing and seek to impose on the Defendants liability to purchase Ether at the current price.  Any claims – and in particular, the equitable claims – should have been brought when the claims were ripe and Loyakk Ltd., actually existed to recover funds.

The Complaint makes reference to iStrategies Limited which according to the Complaint "issued the [ICO] for the Vega Platform that was developed and built by Loyakk U.S." Compl. ¶8. To the extent that the compensation owed to the Plaintiff included "a guarantee 0.5% of Loyakk U.K.'s total crypto-token float upon the ICO Completion Date." Comp. ¶ 18(III).  Failure to name

the necessary party who is in the only position to provide the crypto-token float requires the dismissal of the Complaint for failure to name a necessary party.

E.     **Conclusion**

      For the reasons described full above, we respectfully submit that this Court has no personal jurisdiction over Defendant Ali, and no jurisdiction over this dispute.  Even if this Honorable Court were to find jurisdiction over the dispute, the Complaint provides no factual basis to pierce the corporate veil and to impose personal liability on Defendant Ali for alleged wrongdoing by Loyakk Ltd.  And as shown in this Memorandum, there is no cause of action properly plead against Defendant Ali, and other reasons to dismiss the Complaint.

      For these reasons, Defendant Ali respectfully submits that the Complaint must be dismissed with prejudice and without leave to Amend because any such amendment would be futile.

Dated: **November 17, 2022**

RESPECTFULLY SUBMITTED,

*/s/Crystal J. McDonough*
**Crystal J. McDonough, Esq.**
*Wyoming Attorney No: 7-4927*
**MCDONOUGH LAW GROUP**
1635 Foxtrail Drive
Loveland, CO 80538
Phone: (970) 776-3311
e-mail: crystal@mcdonoughlawgroup.com

*Attorney for Defendant Salim Ali*

Served Via ECF on All Appearing Parties
Served via e-mail and mail on Defendants Quasim and Loyakk Ltd.