Gay Woodhouse, 5-1580
Christopher M. Brennan, #7-5529
WOODHOUSE RODEN AMES & BRENNAN, LLC
1912 Capitol Ave., Ste 500
Cheyenne, WY 82001
307-432-9399
Email: gay@wrablaw.com
*Attorney for Defendant Sadiq Quasim*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING (CHEYENNE)

| | |
|---|---|
| **NATHAN CHRISTIAN,** | |
| Plaintiff, | |
| v. | Case No. 1:22-cv-00215 |
| **LOYAKK, INC.,** **LOYAKK LTD.,** **SALIM ALI,** *and* **SADIQ QUASIM** | **MEMORANDUM OF LAW** **AND POINTS OF LAW** *by* **DEFENDANT SADIQ QUASIM** *in support of* **THE MOTION TO DISMISS** |
| Defendants. | |

## <u>**Table of Contents**</u>

A.      Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

B.      Procedural and Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

C.      Argument:

     i.      This Court has no Personal Jurisdiction
            Over Defendant Sadiq Quasim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    ii.      This Court has no Subject Matter Jurisdiction over this case
            because the Amount in Dispute is less than $75,000.00 . . . . . . . . . . . . . . . . 10

    iii.     This Court has no Subject Matter Jurisdiction
            over the claims against Quasim because it requires
            intervention in the internal affairs of
            a foreign Corporation the revisiting of
            corporate dissolution action by UK Companies House . . . . . . . . . . . . . . . . . 12

    iv.     There are no Plausible or Non-Conclusory
            Allegations that Support imposing liability
            Sadiq Quasim for torts allegedly committed by Loyakk Ltd . . . . . . . . . . . . 15

     v.      The Causes of Action are Not Plead
            against the Defendant Sadiq Quasim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    vi.     Additional Considerations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

D.      Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## A.    Introduction

The Complaint seeks the wrong relief, from the wrong party, before the wrong Court. As against Defendant Sadiq Quasim, it must be dismissed and with prejudice.

### This case was filed in the wrong Court

The Complaint must be dismissed because Courts sitting at Wyoming have no personal jurisdiction over Defendant Sadiq Quasim.  The Complaint alleges that Quasim is a natural person resident in the United Kingdom, Compl. ¶ 6, *see also* Quasim Affidavt in Support, which has been filed contemporaneously herewith. Nothing in the Complaint alleges that Quasim committed any intentional acts expressly aimed at Wyoming with knowledge that the brunt of any injury would be felt in Wyoming.  FRCP 12(b)(2) and (3); WYO STAT. § 5-1-107, the relevant provisions of the Wyoming and United States Constitutions, and precedent of the 10th Circuit Court of Appeals require dismissal of the Complaint.

Further, federal courts have no subject matter jurisdiction over the claims alleged in the Complaint because the matter in controversy does not exceed the value of $75,000.00.  As alleged in the Complaint, the amount in dispute is around $25,000.00, and therefore under FRCP 12(b)(1), 18 U.S.C. § 1332, and precedent from the 10th Circuit Court of Appeals require dismissal of the Complaint.

Further, this Honorable Court has no subject matter jurisdiction over the dispute described in the Complaint because a court sitting in Wyoming must decline to interfere with the internal management, corporate dissolution, creditor relations, and determination of the corporate status of corporations organized under United Kingdom law.  FRCP 12(b)(1) and precedent require dismissal of the Complaint.

In summary: since the Court has no personal or subject matter jurisdiction over the claims against Sadiq Quasim the Complaint must be dismissed.

**This case was filed against the wrong Defendant.**

The Complaint alleges that Loyakk, Ltd., a defunct and/or restored United Kingdom Corporation, breached the payment provisions of their advisory agreement with the Plaintiff. The Complaint makes no non-conclusory allegations that Defendant Quasim, had such unity of interest and ownership with Loyakk Ltd., that the individuality, or separateness, of Loyakk, Ltd had ceased, and that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice. Simply put, if any damages were suffered, the Complaint does not plausibly allege that such damages were Defendant Quasim's fault or that there is any basis to impose liability on Defendant Quasim for alleged torts committed by a separate party.

The Complaint fails to allege any basis to impose liability on Defendant Quasim and must be dismissed with prejudice pursuant to FRCP 12(b)(6).

**This case was filed for the wrong claims.**

The Complaint on its face fails to allege any cause of action arising from alleged torts committed by Defendant Quasim. In addition, the duplicative claims all arise from the written terms of the purported contract, and the claims for Breach of Covenant of Good Faith and Fair Dealing, Unjust Enrichment, Quantum Meruit, and Negligence and therefore must be dismissed as duplicative. Furthermore, admissible documentary evidence shows that there is no claim against Quasim personally and that Plaintiff failed to name a necessary party. Finally, the claims are untimely under the doctrine of laches. Therefore, the Complaint must be dismissed with prejudice pursuant to FRCP 12(b)(6) and (7).

In Summary: This Honorable Court has no personal jurisdiction over Defendant Quasim and no subject matter jurisdiction over the Plaintiff's claims against Quasim.  The Complaint makes no allegations sufficient to impose liability on Defendant Quasim for alleged torts committed by Loyakk Ltd.

For these reasons Defendant Quasim respectfully submits that the Complaint must be dismissed as against them and with prejudice and without leave to amend.

**B.**     **Procedural and Factual Background**

A true, accurate, and complete copy of the Complaint was filed as Docket Entry No. 1 and is referred to in this Memorandum as the "**Compl.**"  Defendant Sadiq Quasim is referred to here as the "**Defendant**" or as "**Quasim**".

On this Motion to Dismiss and for the purposes of argument on this Memorandum of Law, the court "accepts as true all factual allegations contained in the complaint", *See, e.g.*, Choq, LLC v. Holistic Healing, LLC, 2020 U.S. Dist. LEXIS 247692 (D.Wy. July 28, 2020)(Freudenthal, District Judge Nancy D.) (*citing* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 572 (2007)).[1]  In addition, the Court may consider documents that are incorporated in the Complaint by reference, which are referred to in the Complaint, and other documentary evidence subject to judicial notice without converting this Motion to Dismiss into a Motion for Summary Judgment. *See* Gee v. Pacheo, 627 F.3d 1178, 1186 (10th Cir. 2010).

---

[1]     For the avoidance of doubt, the adoption of the factual claims as alleged by the Plaintiff in this Procedural and Factual Background section and the argument section of this Memorandum is *not* an admission by Quasim to any allegation in the Complaint.  Were it to become necessary to Answer the Complaint, Quasim will respond fulsomely to the entirely misguided factual claims in the Complaint.

The Complaint alleges[2] that on April 14, 2018, the Plaintiff entered into a "Strategic Advisor/Consultancy Services Agreement" with a British company named Loyakk Ltd. Compl. at ¶ 17 and Ex. 5.   A complete, true and accurate copy Strategic Advisor/Consultancy Services Agreement is annexed as Exhibit 5 to the Complaint, filed as Docket Entry in this matter, and is referred to here as the "Agreement".   Under the terms of the Agreement, Plaintiff was entitled to 10 Ether ("Ξ")[3] within three business days after the pre-ICO ended; 100 Ξ within three business days after the ICO; and 0.5% of Loyakk's total crypto-token float when the ICO ended.   Compl. at ¶ 18 and Exhibit B of the Agreement (at p. 8).

The Complaint alleges that the Plaintiff fulfilled all his responsibilities under the contract, Compl. ¶¶ 21-27, and that the contract was not terminated until October 14, 2018. Compl. ¶ 28.

The Complaint alleges that the Pre-ICO sale ended on June 14, 2018, Compl. ¶ 20, and that the ICO concluded on October 31, 2018.   Plaintiff alleges that that Loyakk Ltd. failed to pay Plaintiff. Compl. ¶¶ 30-32, 49.

The Complaint speculates about the post-ICO activity, Compl. ¶¶ 35-46 of Loyakk Ltd., and makes conclusory claims about Quasim's role as an alter ego Loyakk Ltd. Compl. ¶ 48.

As for the causes of action, the Complaint alleges that Quasim is liable for either breaching the advisor agreement himself, or in the alternative, is liable for aiding and abetting Loyakk Ltd.'s alleged breach of the Advisor Agreement. Compl. ¶¶ 50-56.   The Complaint alleges that Quasim

---

[2]   Defendant Quasim respectfully adopts in full the procedural and factual background presented by their co-Defendants Salim Ali and Loyakk Inc., in their Motions to Dismiss to the extent that their presentation is not prejudicial to Quasim or contradictory to the background provided in this Memorandum of Law.

[3]   *See* Ethereum, WIKIPEDIA THE FREE ENCYCLOPEDIA available at <https://en.wikipedia.org/wiki/Ethereum> (last checked November 27, 2022)(indicating that "Ξ" is the currency symbol for Ether cryptocurrency.

breached a covenant of good faith and fair dealing with the Plaintiff, or in the alternative, is liable for aiding and abetting Loyakk Ltd.' s alleged breach of the covenant of good faith and fair dealing. Compl. ¶¶ 57-63.

The Complaint alleges two additional equitable theories. Compl. ¶¶ 64-70. Further, the Complaint also asks this Court to revisit the process by which Loyakk Ltd. was dissolved under United Kingdom procedure and law. Compl. ¶¶ 71-77.

The Complaint seeks about two hundred thousand dollars in damages based on the "fluctuating price of Ether." Compl. ¶ 56.  This amount appears to be based on the price of Ξ, as of the filing of the Complaint.

**C.**     **Argument**

    **i.**     **This Court has no Personal Jurisdiction over Defendant Quasim**

Defendant Quasim respectfully adopts in full the argument about personal jurisdiction made by their co-Defendants Ali and Loyakk Inc. to the extent they are not prejudicial to Defendant Quasim and are not contradicted by the arguments here.

"The law of the forum state and constitutional due process limitations govern personal jurisdiction in federal court". Old Republic Ins. Co. v. Cont'l Motors, Inc., 877 F.3d 895, 903 (10th Cir. 2017)(*citing* Intercon Inc. v. Bell Atl. Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000)).  Wyoming's long-arm statute allows jurisdiction to be exercised consistent with and to the extent allowed under the United States Constitution. WYO. STAT. § 5-1-107.

The 10th Circuit Court of Appeals summarized the requirements for there to be minimum contacts sufficient to obtain specific personal jurisdiction over a foreign resident Defendant.  The Minimum Contacts analysis requires the Plaintiff to establish that that a foreign Defendant did:

      (a) an intentional action . . . , that was

      (b) expressly aimed at the forum state . . . , with

(c) knowledge that the brunt of the injury would be felt in the forum state.

Dudnikov v. Chalk v. Vermillion Fine Arts, 514 F.3d 1063, 1072 (10th Cir. 2008) (applying Calder v. Jones, 465 U.S. 783 (1984)).

This Court has also made clear that when assessing personal jurisdiction over a Defendant, each Defendant has to be assessed individually.  Whatever the status of the Wyoming jurisdiction clause in the alleged advisor agreement between the Plaintiff and Loyakk Ltd., the Plaintiff has the burden to make an individualized showing that *Defendant Quasim himself* directed his conduct at this State.  As this Honorable Court wrote: "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employe[d] him . . . Each [D]efendant's contacts with the forum State must be assessed individually", PPEX, LLC v. Buttonwood, Inc., 2021 U.S. Dist. LEXIS 254567 (D. Wy. July 13, 2021) (Freudenthal, District Judge Nancy D.) *citing* Keeton v. Hustler Mag. Inc., 465 U.S. 770, 781, n. 13 (1984); Calder, Id., at 465 U.S.  at 790 (1984)).

Similarly, in Cunningham v. ASI, LLC, 2019 U.S. Dist. LEXIS 202441 (D.Wy. Jan. 9, 2019) (Freudenthal, District Judge Nancy D.) this Honorable Court found that since a Defendant did not direct their conduct at Wyoming, there was no jurisdiction over them despite the counterparty being a Wyoming Company.

Defendant Quasim respectfully submits that it is indisputable that this Court has no personal jurisdiction over Defendant Quasim and therefore the Complaint must be dismissed against him pursuant to FRCP 12(b)(2) and (3); Wyo Stat. § 5-1-107, the relevant provisions of the Wyoming and United States Constitutions, and precedent of the 10th Circuit Court of Appeals.

The Complaint alleges that Defendant Quasim's business address is in the United Kingdom. Compl. ¶ 6.  The Quasim Affidavit further confirms that Mr. Quasim never visited Wyoming,

never agreed to subject himself to jurisdiction in Wyoming, and never directed any conduct at Wyoming.  There is no general jurisdiction over Defendant Quasim.

In terms of specific jurisdiction, as noted above, the Plaintiff has the burden of substantiating personal jurisdiction over Defendant Ali.  Omni Holdings v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998).  The Complaint on its face does not even make a "*prima facie* showing that jurisdiction exists." Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995).

The sole allegation about Defendant Quasim's wrongdoing as it relates to the cause of action for Breach of Contract (and Breach of Implied Covenant of Good Faith and Fair Dealing) are the conclusory statements that Quasim "aided and abetted Loyakk U.K.'s breaches through their wrongful conduct". *See, e.g.*, Compl. ¶ 55, 62.

Where did this happen?  When?  And how?  Other than the conclusory claim about Quasim being an alter ego of Loyakk Ltd., there are no and can be no allegations about conduct by Quasim that was *directed at Wyoming* in a manner sufficient to establish specific personal jurisdiction over him.  By the Plaintiff's only description the alleged wrongdoing and alter ego actions arose from the winding up of Loyakk Ltd., diversion of assets, and transferring funds to the "Crown". Compl. ¶ 48.  Under any standard and assuming those allegations support a piercing the corporate veil claim; they were tortious activities committed in the United Kingdom.

For these reasons, Defendant Quasim respectfully submits that this Court has no personal jurisdiction over him – neither general jurisdiction over him as a United Kingdom resident; nor specific jurisdiction over him arising out of any alleged actions aimed at Wyoming.  Therefore, the Complaint as against Quasim should be dismissed.

ii.     **This Court has no Subject Matter Jurisdiction over the Dispute because the Amount in Dispute is less than $75,000.00**

The Civil Cover Sheet filed with the Complaint is marked by the box by "Diversity", indicating this Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  That provision grants this Honorable Court jurisdiction over civil actions where (among other requirements) the sum in controversy exceeds the sum of $75,000.00.

The amount in jurisdiction here does not exceed the sum of $75,000.00.

Plaintiff themselves alleges that "[w]hile the exact total of Mr. Christian's outstanding damages cannot be specifically defined as it depends, in part, on the fluctuating price of Ether and the float of Loyakk U.K.'s tokens, these damages total at least $198,700 USD." Compl. ¶ 56.  It is not entirely clear how Plaintiff arrived at that number, but it appears to be based on the valuation of Ξ as of August 31, 2022.  *See* Compl. ¶ 30, fn. 5.[4]

As more fully described in the Motion to Dismiss by Defendant Ali, which is incorporated in full to the extent it is not prejudicial to Quasim or contradicted by the argument here, Wyoming follows the "New York rule", *See*, Martel v. Hall Oil Co., 36 Wyo. 166, 179 (1927)(*citing* Smith v. Griffith, 3 Hill 333 (N.Y.Sup.Ct. of Judicature 1842)).  Under the New York Rule, the valuation of damages for failure to deliver an asset is based on the "range of the entire market and the average of prices thus found, running through a reasonable period of time." Martel, *Id. citing* Smith.

Applying the "New York rule" to a case very similar to this case *sub judice*, a Delaware Court earlier this year used the highest intermediate value within three months of the alleged

---

[4]     The 110 Ξ at the stated price of $1,554.90 per coin on August 31, 2022 comes to $171,039.00. It would appear that the difference between the claimed $198,700.00 and the valuation based on the August 31, 2022 price per coin is interest.  The valuation of the amount in dispute for Diversity Jurisdiction purposes excludes interest, *See* 28 U.S.C. 1332 (". . . where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and cost . . . ").

breached to value damages from non-delivery of cryptocurrency.  *See* Diamond Fortress Techs.,
Inc. v. EverID, Inc., 274 A.3d 287 (Sup.Ct. Delaware New Castle Apr. 14, 2022)(Wallace, J. Paul
R.).

We would respectfully propose that this approach can serve as a roadmap in assessing the
alleged amount of damages in this case.  Applied here shows the following amount in dispute:

| Amount Allegedly Due | Date | Highest Valuation of Ξ within three months | Value of Damages |
|---|---|---|---|
| 10Ξ | June 14, 2018 | $540.24 | $5,402.40 |
| 100Ξ | November 2, 2018 | $220.09 | $22,009.00 |
| | | Total: | $27,411.40 |

The basis for the "Highest Valuation" shown here are based on CoinMarketCap historic
charts, *See* Affidavit of McDonough in Support of Motion to Dismiss by Defendant Ali at Exhibits
D and E, docketed as Docket Entries 8-4 and 8-5 in this matter.  Courts across the country have
held that CoinMarketCap is an objective and reliable basis to determine the price of
Cryptocurrency at a specific time.  *See, e.g.,* Diamond Fortress Techs., *Id.* 274 A.3d at 305, fn.
133(*citing* CFTC v. McDonnell, 332 F.Supp. 3d 641, 670-71 (2018)); CFTC v. Reynolds, Case
No. 19-cv-5631, 2021 U.S. LEXIS 38896 (S.D.N.Y. March 2, 2021)("CoinMarketCap is a reliable
valuation tool"); *and* Hodges v. Harrison, 372 F.Supp. 3d 1342, 1353, n. 1 (S.D.Fla. 2019).  *See
also* Handley v. La Melza, Case No. 22-cv-797, 2022 U.S. Dist. LEXIS 155383 at *11 (C.D.Cal.
Feb. 15, 2022).

Further, we respectfully submit that the historic valuation of Ξ shown at CoinMarketCap
are "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without
converting the motion to dismiss into a motion for summary judgment."  Tal v. Hogan, 453 F.3d

1244, 1265 at fn. 24 (10th Cir. 2006)(*citing* Grynberg v. Koch Gateway Pipeline Co., 390 F.3d 1276, 1278 fn. 1 (10th Cir. 2004)); 27A FED.PRO. L.ED. § 62:520 (2003).

In summary: Since, as a matter of law, the amount in dispute is less than $75,000.00, this Court has no subject matter over the dispute and the Complaint must be dismissed as against Defendant Quasim.

### iii.   This Court has no Subject Matter Jurisdiction over the Dispute because it requires intervention with the internal affairs of foreign Corporations

Defendant Quasim respectfully adopts in full the argument by their co-Defendants Salim Ali and Loyakk Ltd., in their Motion to Dismiss about the lack of jurisdiction because the Causes of Action necessarily require the Court to intervene in the internal affairs of a foreign Corporation and to serve as an appellate review of the actions by the United Kingdom's Companies House.

The centerpiece of the Complaint's theory to impose liability on other parties aside from Loyakk Ltd., arises from the alleged corporate dissolution process in 2019. The Complaint at ¶¶ 33-45 contains discussion of the practices of "Companies House" (the UK Corporate registration system) and the rights of the English Crown upon dissolution. The Complaint makes a legal argument that American due process standards should have applied to the notice requirements under United Kingdom law and that the U.K. Companies House dissolution process failed to protect due process rights of the Plaintiff-creditor. Compl. ¶ 40.

However framed, all of the piercing corporate veil arguments, the aiding and abetting claims, the negligence claims and all claims other than direct breach of contract claims against Loyakk Ltd. itself will *necessarily* require this Court to serve as an overseer of the corporate dissolution process of a United Kingdom Corporation, and to second-guess the actions taken by Companies House in 2019. Indeed, the key alleged wrongdoing by Quasim is their allegedly

tortious supervision and management of: (1.) the winding up of Loyakk Ltd., (2.) diversion of assets, or (3.) leaving assets to the British Crown.   Compl. ¶ 48.   By the Complaint's own description, any liability imposed on Quasim in this case must be based on this Court's re-assessment of the dissolution of Loyakk Ltd. and decisions taken by Companies House and the British Crown.

Whether framed as a discretionary matter of *forum non conveniens*, or a lack of subject matter jurisdiction[5] – it is the simply the case that "[i]t has long been settled doctrine that a court – state or federal – sitting in one State will as a general rule decline to interfere with or control by injunction or otherwise the management of the internal affairs of a corporation organized under the laws of another State but will leave controversies as to such matters to the courts of the State of the domicile."  Rogers v. Guaranty Trust Co., 288 U.S. 123, 130 (1933).

There are no claims against Defendant Quasim that can be teased apart from the underlying issues related to the corporate status of Loyakk Ltd.  As alleged, the causes of action will require this Court to decide on the validity of the dissolution by Companies House, the current status of Loyakk Ltd., and even the status of the Corporation in the future if it is restored. *See* Kaazar Capital Partners, Ltd. v. Bactrac Tech., LLC, 2019 U.S. Dist. LEXIS 246245 at *7 (N.D.Ga. Nov. 1, 2019)(describing how under United Kingdom law, a struck-off company may apply for restoration and "[t]he general effect of restoration to the register by court order is that the company is considered to have continued in existence as if it had not been struck off the register or dissolved.")(*citing* UNITED KINGDOM COMPANIES ACT § 1032(1)).

---

[5]    *Compare* Koster v. (American) Lumbermens Mutual Casualty Co., 330 U.S. 518 (1947) describing the foreign corporation non-interference rule as an application of the doctrine of *forum non conveniens*; with Codos v. National Diagnostic Corp., 711 F.Supp. 75 (E.D.N.Y. May 25, 1989) which cites Weiss v. Routh, 149 F.2d 193, 196 (2d Cir. 1945) for the proposition that federal dissolution actions are *inherently* not within the jurisdiction of federal courts.

As the co-Defendants illustrated: Let's consider a scenario where this Court issues a decision that finds Loyakk Ltd. was improperly dissolved and/or that the Plaintiff is a valid creditor entitled to collect from the Directors personally.  Meanwhile a United Kingdom magistrate grants an application for restoration and rules that Loyakk Ltd. continued in its legal existence and/or issues an opinion that the creditors' rights were properly protected during the 2019 dissolution of Loyakk Ltd..  What should the alleged former Director(s) of Loyakk Ltd. do when facing these conflicting Court Orders?  Should Quasim comply with the direction of a local United Kingdom Magistrate or follow the decision of a District Judge sitting thousands of miles away?  This risk of conflicting orders is a key the basis for the doctrine that the Court should not revisit corporate dissolution processes overseas.  In this case, the application of that doctrine requires the Court to bow out of adjudicating the claims against Quasim pursuant to FRCP 12(b)(1), (3) and (6), the doctrine of *forum non conveniens*, and the "settled doctrine" of <u>Rogers</u> and its progeny.

For these reasons we respectfully submit that the Complaint must be Dismissed because this Honorable Court has no subject matter jurisdiction, the case was filed in the wrong forum, and settled doctrine requires this Court to refrain from revisiting corporate status issues overseas; and there is no claim for which relief can be granted; in addition and/or in the alternative this Honorable Court should decline jurisdiction over this case under the doctrine of *forum non conveniens*.

> **iv.    There are no Plausible or Non-Conclusory**
> **Allegations that Support imposing liability**
> **on Quasim for torts allegedly committed by Loyakk Ltd.**

It is clear that it is black-letter American law that corporate entities are legally distinct from their individual owners, officers and directors.<u>Gramercy Distressed Opportunity Fund II, L.P. v. Bakhmatyuk</u>, 2022 U.S. Dist. LEXIS 170787 (D.Wy. Sept. 15, 2022)(Freudenthal, District Judge Nancy D.) *citing* 1 FLETCHER CYC. CORP. § 25 (Sept. 2021 update); <u>Ridgerunner LLC v. Meisnger</u>,

2013 Wy. 31297 P.3d 110, 115 (Wyo. 2013); ARW Expl. Corp. v. Aguirre, 45 F.3d 1455 (10th

Cir. 1995).

This Court would only pierce the corporate veil to impose personal liability on the officers

and directors if:

> the corporation [w]as not only influenced and governed by that
> person, but that there is such a unity of interest and ownership that
> the individuality, or separateness, of such person and corporation has
> ceased, and that the facts are such that an adherence to the fiction of
> the separate existence of the corporation would, under the particular
> circumstances, sanction a fraud or promote injustice.

Virgin Entertainment Ltd. v. Virginic LLC, 2020 U.S. Dist. LEXIS 267175 (D.Wyo. Apr.

1, 2020)(Freudenthal, District Judge Nancy D.)(citing Energy Drilling, LLC v. Virtus Oil & Gas

Corp., 2016 WL 9450461 (D.Wyo. Apr. 15, 2016)(Freudenthal, District Judge Nancy D.)); Ten

Mile Indus. Park v. W. Plains Serv. Corp., 810 F.2d 1518 (10th Cir. 1987).

The non-conclusory allegations in the Complaint all contradict any piercing-the-corporate-

veil theory.

As alleged in the Complaint: "In Spring 2018, [] and Quasim contacted [Plaintiff to seek

Plaintiff's] guidance, advisement, reputation, and labor *to help develop and advance Loyakk's

cryptocurrency-based business ventures*..." Compl. ¶ 14 (emphasis added).  Rather than indicating

unity, this allegation clarifies that from the get-go the parties always understood Loyakk to be an

independent entity.  When things went awry, the Complaint alleges that Quasim spoke with the

Plaintiff by phone about "how their relationship would proceed further *in the context of the Advisor

Contract*".  Compl. ¶ 23 (emphasis added).  The services provided by Plaintiff – both those

contracted for and those that "went far above and beyond what was asked of him in the Advisor

Contract" – were to benefit Loyakk and not Quasim personally, See Compl. ¶¶ 26-27.

As alleged explicitly in the Complaint, "On December 7, 2018, at a meeting more than a month after the contract had expired, [] Quasim, *on behalf of Loyakk U.K.*, indicated that there was an issue with upholding Loyakk U.K.'s end of the deal to pay him in exchange for services rendered." "The conversation ended with [] Quasim *on behalf of Loyakk U.K.*, promising to pay [Plaintiff] in the near future". ¶ 32 (emphasis added)

Rather than evincing that the individually or separateness had ceased, the Complaint alleges and the record shows that all negotiations and allegedly failure to perform was done by Loyakk U.K. and not by Quasim *personally*. The discussion about the United Kingdom dissolution process that took place long after the alleged breach discusses wrongs perpetrated in the winding up process, *See* Compl. ¶ 48. Even reading the Complaint to grant Plaintiff every inference, nothing in that allegedly botched dissolution process establishes unity of interest during the life of the Company; and if anything reinforces the distance between Defendant Quasim personally and the alleged actions by the United Kingdom Corporation such that formal dissolution processes were undertaken by its Directors.

For these reasons, we respectfully submit that since the Complaint has not even made a *prima facie* claim to pierce the corporate veil and impose the alleged liabilities of Loyakk Ltd., on any other party; let alone Defendant Quasim and therefore the Complaint as against Defendant Quasim must be dismissed and with prejudice and without leave to Amend pursuant to FRCP 12(b)(6) and clear precedent of this Court.

###     v.     The Causes of Action are Not Plead Against Defendant Quasim

The first cause of action seeks to impose liability on Defendant Quasim for Breach of Contract; and, in the alternative, for aiding and abetting the breach of contract allegedly committed

by Loyakk U.K. Compl. ¶¶ 50-56.A similar theory is set forth to impose aiding and abetting liability for Breach of Implied Covenant of Good Faith and Fair Dealing. Compl. ¶¶ 57-63.

Quasim adopts the argument by their co-Defendants Ali and Loyakk Inc. in their respective Motions to Dismiss to the extent that they are not prejudicial to Quasim and do not contradict the argument made here.

Quasim also repeats and reargues the discussion about and emphasizes that re-naming a piercing the corporate veil theory as "aiding and abetting" cannot be used to eviscerate the personal liability protections that are at the heart of the corporate legal structure.  The Plaintiff's failure to allege any basis to pierce the corporate veil also fails to establish any personal liability of Quasim for alleged torts by Loyakk Ltd.

When assessing potential aiding and abetting claims, Wyoming courts fall back on the "common law", *See* Quest Holco, LLC v. Scott Bushkie & Cornerstone Bus. Servs., 2021 U.S. Dist. LEXIS 255388 *9 (D.Wyo. July 19, 2021)(*citing* WYO. STAT. ANN. § 8-1-101); Howard v. Aspen Way Enterprises, Inc., 406 P.3d 1271 (Wyo. 2017).

There does not appear to be any case law in Wyoming on the use of an aiding and abetting theory to impose liability for breach of contract.  Instead, using the Restatement – often cited by courts in other states when assessing aiding and abetting claims –shows that there are three way to allege aiding and abetting liability under the common law.  The Plaintiff must allege that the Defendant:

      (a)      [did] a tortious act in concert with the other or pursuant to a common design with him, or

      (b)      [knew] that the other's conduct constitute[d] a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

(c)     [gave] substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

2d RESTATEMENTS OF TORTS § 876.

Plainly the alleged failure to pay was done by Loyakk Ltd., and Defendant Quasim did not commit the tort themselves.  The Complaint contains no allegation that Defendant Quasim knew that there was a breach of duty, or gave substantial assistance toward the alleged breach.  To the contrary – the Complaint alleges that *after the breach*, Defendant Quasim committed "on behalf of Loyakk U.K." to make Plaintiff whole. Compl. ¶ 32.  And the Complaint does not and cannot allege that Defendant Quasim provided "substantial assistance" or through his own conduct, separately engaged in actions that "constitute[d] a breach of duty [to Plaintiff]".

For these reasons, we respectfully submit that the first two causes of action must be dismissed as against Defendant Quasim and with prejudice.

The Third and Fourth Causes of Action are equitable claims.  Under Wyoming law, a duplicative claim for equitable claims can only move forward, "[I]f a Plaintiff can present evidence of distinct, separate losses under an equity or tort theory sufficient to justify recovery beyond breach of contract, then it should be entitled to make a recovery so long as it is not duplicative or cumulative in nature." Roussalis v. Apollo Elec. Co., 979 P.2d 493, 496 (Wyo. 1999)(*citing* Fox v. F & J Gattozi Corp., 672 N.E.2d 547 (Mass.App.Ct. 1996)).

In this case, the equitable causes of action arise out of the same factual allegations and seek the same "$198,700 in promised compensation." Compl. ¶ 67, 70.

Therefore, no independent cause of action for unjust enrichment or quantum meruit can move forward against Defendant Quasim.  The claims against him must stand or fall on whether there is a valid claim for Breach of Contract.

The final cause of action for negligence embodies all the show-stopping issues of the other causes of action.  It is duplicative of the Breach of Contract claim; it fails to establish any basis to pierce the corporate veil, it does not allege any basis to impose aiding and abetting liability, or cannot establish any other basis to hold Defendant Quasim personally liable for alleged wrongdoing by Loyakk Ltd.

For these reasons, Defendant Quasim respectfully submits that the Plaintiff has failed to make out any cause of action against Defendant Quasim and therefore the Complaint must be dismissed against him and with prejudice without leave to Amend.

      **vi.**    **Additional Considerations**

Even assuming the Court were to find that it has jurisdiction over Quasim and even assuming the Court were to find that it has jurisdiction over the dispute (despite there being less than $75,000.00 in dispute, and despite there being no jurisdiction to second guess Companies House); and even if the Court were to find that the Complaint contains sufficient allegations to impose Loyakk Ltd.s' liability on Quasim and/or the Court finds that the Complaint has plausibly alleged causes of action against Quasim, the Court should still dismiss the Complaint for the following reasons:

The causes of action including the equitable claims are subject to laches.  The Plaintiff cannot lay in wait for years; and then surprise the Defendants at a time of their choosing – when the value of Ether is more than triple the price in 2018 – and seek to impose on the Defendants liability to purchase Ether at the current price.  Any claims should have been brought when the claims were ripe and Loyakk Ltd., actually existed to recover funds and therefore the Complaint must be dismissed under the doctrine of Laches.

The Complaint makes reference to iStrategies Ltd. which according to the Complaint "issued the [ICO] for the Vega Platform that was developed and built by Loyakk U.S." Compl. ¶8. To the extent that the compensation owed to the Plaintiff included "a guarantee 0.5% of Loyakk U.K.'s total crypto-token float upon the ICO Completion Date". Comp. ¶ 18(III). Failure to name the iStrategies Ltd., which was allegedly responsible for providing the guaranteed float and who are a necessary party should guide this Court to dismiss the Complaint for failure to name a necessary party.

In addition, the agreement between Loyakk and iStrategies commits any dispute to arbitration in California and the United Kingdom and is therefore not appropriately before this Court.

## D.   **Conclusion**

For the reasons described full above, we respectfully submit that this Court has no personal jurisdiction over Quasim and no jurisdiction over this dispute. Even if this Honorable Court were to find jurisdiction over the dispute, the Complaint provides no factual basis to impose liability on Quasim for alleged wrongdoing by Loyakk Ltd. In addition, as argued above, there is no cause of action properly plead against Quasim and other reasons to dismiss the Complaint.

For these reasons, Quasim respectfully submits that the Complaint must be dismissed with prejudice and without leave to Amend because any such amendment would be futile.

Dated: **November 30, 2022**

Respectfully submitted,

*/s/ Gay Woodhouse*
Gay Woodhouse, 5-1580
Christopher M. Brennan, #7-5529
WOODHOUSE RODEN AMES & BRENNAN, LLC
1912 Capitol Ave., Ste 500
Cheyenne, WY 82001
307-432-9399
Email: gay@wrablaw.com
         christopher@wrablaw.com
*Attorney for Defendant Sadiq Quasim*


*/s/ Baruch S. Gottesman*
Baruch S. Gottesman, Esq.
Law Office of Baruch S. Gottesman, Esq.
185-12 Union Turnpike
Fresh Meadows, NY 11366
(212) 401-6910
bg@gottesmanlegal.com
*Attorney for Defendant Sadiq Quasim*
*Application for Admission* Pro Hac Vice *Pending*

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of November, 2022, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties registered for electronic filing via the CM/ECF system, specifically:

| | |
|---|---|
| Robert V. Cornish, Jr.<br>Law Offices of Robert V. Cornish, Jr., PC<br>680 S. Cache St., Ste. 100<br>Jackson, WY 83001<br>rcornish@rcornishlaw..com | ☐ U.S. Mail<br>☐ Hand delivered<br>☐ Court Mailbox<br>☒ Other: CM/ECF.<br>☐ Email: |

   */s/ Christopher M. Brennan*
Of Woodhouse Roden Ames & Brennan, LLC