Robert V. Cornish, Jr.
**LAW OFFICES OF ROBERT V. CORNISH, JR., PC**
Wyoming Attorney No.: 6-3898
680 South Cache Street, Suite 100, P.O. Box 12200
Jackson, WY 83001
Office: (307) 264-0535
Email: rcornish@rcornishlaw.com

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| NATHAN CHRISTIAN, | |
| Plaintiff, | Civil Action No. 2:22-cv-215 |
| v. | **PLAINTIFF'S OPPOSITION TO DEFENDANT SADIQ QUASIM'S MOTION TO DISMISS THE COMPLAINT** |
| LOYAKK, INC., LOYAKK LTD., SALIM ALI, AND SADIQ QUASIM | |
| Defendants. | |

Plaintiff Nathan Christian ("Christian" or "Plaintiff") hereby respectfully submits this Opposition to Defendant Sadiq Quasim's (herein "Defendant" or "Quasim")[1] Motion to Dismiss the Complaint. ECF 17.

---

[1] For purposes of this Opposition, all other named Defendants in this action will be collectively referred to as Co-Defendants.

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................ 2

RELEVANT FACTS ........................................................................................................... 3

ARGUMENT ....................................................................................................................... 5

   I.     This Court has Personal Jurisdiction over Defendant ................................................ 5

   II.    This Court has Subject Matter Jurisdiction Over the Disputes at Issue ........................ 8

      A.     The Matter in Controversy Exceeds $75,000 ............................................... 8

      B.     The Claims Do Not Require the Court to Interfere with Internal Affairs of Foreign Corporations .................................................................................................... 10

   III.   The Complaint Sufficiently Pleads Piercing the Corporate Veil .. **Error! Bookmark not defined.**

   IV.   All Claims are Adequately Plead Against Defendant .................................................. 15

   V.    All Necessary Parties Are Named ............................................................................. 17

   VI.   All Claims are Timely and Laches Does Not Bar Any Claims .................................... 18

CONCLUSION .................................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Amfac Mech. Supply Co. v. Federer*,
   645 P.2d 73 (Wyo. 1982) ............................................................................ 11

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................... 3, 6

*Bradley v. Laird*,
   449 F.2d 898 (10th Cir. 1971) ..................................................................... 18

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ................................................................................. 5, 7

*Burt v. Bd. of Regents of the Univ. of Neb.*,
   757 F.2d 242 (10th Cir. 1985) ...................................................................... 5

*Choq, LLC v. Holistic Healing, LLC*,
   Case No. 20-cv-404-NDF (D.Wyo. July 28, 2020) .......................................... 3

*Christopher v. Harbury*,
   536 U.S. 403 (2002) .................................................................................. 14

*Continental Am. Corp. v. Camera Controls Corp.*,
   692 F.2d 1309 (10th Cir.1982) ..................................................................... 5

*Diamond Fortress Techs., Inc. v. EverID, Inc*
   274 A.3d 287 (Del. 2022) ............................................................................ 8

*Dudnikov v. Chalk v. Vermillion Fine Arts*,
   514 F.3d 1063 (10th Cir. 2008) .................................................................... 7

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
   141 S. Ct. 1017 (2021) ............................................................................... 6

*Fox v. F & J Gattozi Corp.*,
   672 N.E.2d 547 (Mass. App. Ct. 1996) ........................................................ 16

*Gas Sensing Tech. Corp. v. New Horizon Ventures Ply Ltd as Tr. of Linklater Family Tr.*,
   471 P.3d 294 (Wyo. 2020) .......................................................................... 15

*Gramercy Distressed Opportunity Fund II, LP v. Bakhmatyuk*,
   No. 21-CV-223-F, 2022 BL 333022 (D. Wyo. Sept. 15, 2022) ........................ 6

*Hood v. Am. Auto Care, LLC,*
    21 F.4th 1216 (10th Cir. 2021) ....................................................................... 5, 7

*Hutchinson v. Pfeil,*
    105 F.3d 562 (10th Cir. 1997) ........................................................................ 18

*Huxall v. First State Bank,*
    842 F.2d 249 (10th Cir.1988) ........................................................................... 4

*Ikelionwu v. United States,*
    150 F.3d 233 (2d Cir. 1998)............................................................................ 18

*Jicarilla Apache Tribe v. Andrus,*
    687 F.2d 1324 (10th Cir. 1982) ...................................................................... 18

*Jontra Holdings Ply Ltd v. Gas Sensing Tech. Corp.,*
    479 P.3d 1222 (Wyo. 2021)............................................................................ 15

*Keeton v. Hustler Magazine, Inc.,*
    465 U.S. 770 (1984) .......................................................................................... 6

*Lawrence Nat'l Bank v. Edmonds (In re Edmonds),*
    924 F.2d 176 (10th Cir. 1991) ........................................................................ 19

*Leonard v. United States,*
    235 F.2d 330 (10th Cir. 1956)…………………………………………………...5

*McGee v. International Life Ins. Co.,*
    355 U.S. 220 (1957)........................................................................................... 7

*Medina v. Four Winds Intl. Corp.,*
    111 F. Supp. 2d 1164 (D. Wyo. 2000).......................................................... 11

*Meredith v. Health Care Products, Inc.,*
    777 F. Supp. 923 (D. Wyo. 1991).................................................................... 4

*Minton v. Cavaney,*
    56 Cal.2d 576 (1961) ...................................................................................... 11

*Opal Mercantile v. Tamblyn,*
    616 P.2d 776 (Wyo. 1980).............................................................................. 10

*Perkins v. Benguet Consol. Mining Co.,*
    342 U.S. 437 (1952).......................................................................................... 6

*Pro Axess, Inc. v. Orlux Distribution, Inc.,*

428 F.3d 1270 (10th Cir. 2005) ............................................................... 6

*Quest Holco, LLC v. Scott Bushkie & Cornerstone Bus. Servs.*
   Case No. 21-cv-0051 (D. Wyo. July 19, 2021) ........................................ 15

*Rambo v. Am. S. Ins. Co.*,
   839 F.2d 1415 (10th Cir. 1988) ........................................................... 5

*Roussalis v. Apollo Elec. Co.*
   979 P.2d 493 (Wyo. 1999) ................................................................. 16

*Sampson v. Hunt,*
   665 P.2d 743 (Kan. 1983) .................................................................. 11

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
   303 U.S. 283 (1938) ......................................................................... 8

*Tex. W. Oil & Gas Corp. v. First Interstate Bank of Casper*,
   743 P.2d 857 (Wyo. 1987) ................................................................. 11

*United States v. Rodriguez-Aguirre*,
   264 F.3d 1195 (10th Cir. 2001) ........................................................... 18

*Virgin Enter. Ltd. v. Virginic LLC,*
   No. 19-CV-0220-F, 2020 BL 577622 (D. Wyo. Apr. 1, 2020) ........................ 12

*Wegerer v. First Commodity Corp. of Bos.*,
   744 F.2d 719 (10th Cir. 1984) ............................................................ 11

*World-Wide Volkswagen Corp. v. Woodson,*
   444 U.S. 286 (1980) .......................................................................... 7

*Wyo. ex rel. Christensen v. Nugget Coal Co.*,
   144 P.2d 944 (Wyo. 1944)) ................................................................. 11

*Yavuz v. 61 MM, Ltd.*,
   465 F.3d 418 (10th Cir. 2006) .............................................................. 6

**Statutes**

Fed. Rule of Civ. Pro., Rule 8 ........................................................... 14, 15

Fed. Rule of Civ. Pro., Rule 19 ............................................................. 17

Judicial Improvements and Access to Justice Act,
   Pub. L. No. 100-702 , Title X, § 1016 (c), 102 Stat. 4670 (1988)) ................... 8

## INTRODUCTION

This case involves disputes that arose from and/or relate to an Advisor Contract entered into on April 14, 2018 by Plaintiff and Loyakk Ltd. ("Loyakk U.K."), a foreign corporation based in the United Kingdom that operated in the cryptocurrency sector. *See* ECF 1 at Exhibit "5." Under the Advisor Contract, Plaintiff was to provide advisory, marketing, and promotional services as well as his general expertise to Loyakk U.K. for six months in exchange for sums of Ether and a portion of Loyakk U.K.'s total crypto-token float.[2]

In the instant motion, Defendant contends that this Court lacks personal jurisdiction over him because he has no minimum contacts with Wyoming. Defendant further argues that this Court lacks subject matter jurisdiction over Plaintiff's claims due to Plaintiff's failure to plead a sufficient amount of damages in controversy. Defendant also moves to dismiss on the grounds of improper venue, failure to state a claim upon which relief can be granted, and failure to join a necessary party. Defendant's arguments are not well-taken and his Motion to Dismiss should be denied.

As explained *infra,* Defendant: (a) purposefully availed himself of the jurisdiction of Wyoming, (b) misinterpreted and wrongly applied applicable laws; (c) consciously failed to acknowledge or address certain facts contained in the Complaint that do not serve to aid Defendant in flouting responsibility for his wrongdoings in connection with Plaintiff's claims and injuries; and (c) failed to offer factual support for certain defenses he has raised. Moreover, the amount in controversy in fact exceeds $75,000 and this Court's jurisdiction over Defendant would not offend

---

[2] Notably, although Plaintiff is now aware of an existing business relationship between iStrategies and Loyakk, Inc., he was not aware of such information at the time of the Advisor Contract. That is, Loyakk U.K. never asserted that anyone other than itself held ownership rights to the ICO for Loyakk U.S.'s proprietary software. Indeed, Plaintiff only came to understand the length and nature of the relationship between iStrategies and Loyakk U.S. when he received a copy of the Reseller Agreement in connection with the currently pending Motions to Dismiss. *See* ECF 9 at Exhibit D.

traditional notions of fair play and substantial justice. Defendant states that he *arguendo* accepts all factual allegations in the Complaint as true and acknowledges that the Court must do so as well. ECF 17-1 at 5; *Choq, LLC v. Holistic Healing, LLC*, Case No. 20-cv-404-NDF (D. Wyo. July 28, 2020) *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). However, Defendant's selective reading of the Complaint coupled with his misapplication of relevant law requires that Defendant's Motion to Dismiss be denied its entirety, or in the alternative, that Plaintiff be granted leave to amend the Complaint.

## RELEVANT FACTS

At all times relevant to this proceeding, Plaintiff was a United States citizen who resided in Laramie County, Wyoming. ECF 1 ¶ 1. Quasim was, at all times relevant to these proceedings, the Chief Executive Officer for Loyakk U.K. and also maintained a managing and/or principal role at Loyakk Inc. ("Loyakk U.S."). *Id.* ¶ 6. Loyakk U.S. is a suspended California corporation which, at all times relevant to this proceeding, purported to develop a proprietary software through which business enterprises worldwide could track user data on the blockchain. *Id.* ¶ 4 Loyakk U.S. was also affiliated with Loyakk U.K. *Id.* Loyakk U.K. purported to issue a crypto token for Loyakk U.S.'s blockchain software. *Id.*

Loyakk U.S. and Loyakk U.K. (collectively "Loyakk") were, at all times relevant to these proceedings, alter egos of one another in that they were related to each by shareholdings, were under common ownership and confederated in their business affairs. Loyakk was also, at all times relevant to these proceedings, controlled by Quasim and Defendant Salim Ali ("Ali"), Loyakk U.S.'s Chief Executive Officer. *Id.* at ¶ 4-5. Loyakk operated under one brand to promote and solicit sales of Loyakk U.K.'s crypto token to gain venture capital for the Vega Platform built and developed by Loyakk U.S. ECF 1 ¶ 4. Notably, Loyakk U.K. and Loyakk U.S. both used the same

logo, the same white paper, the same marketing material, and the same website address – www.loyakk.io – to promote Loyakk U.K.'s ICO *and* Loyakk U.S.'s proprietary software. *Id.* On information and belief, various marketing materials for the Loyakk brand interchangeably listed addresses in California and in the United Kingdom. *Id.* All of these facts and others as discussed *infra,* support Plaintiff's theory that any separateness between the Defendants is purely fiction and thus, Quasim can and should be held liable for his wrongs as well as the wrongs of his Co-Defendants.

Defendant Quasim formed Loyakk U.K. in 2011 and listed himself as its sole shareholder and director. ECF 1 ¶ 12. Loyakk U.S. was formed the same year by Ali who listed himself as both an executive officer and director. *Id.* at ¶ 13. In spring of 2018, Defendant along with Ali contacted Plaintiff, a known citizen of Wyoming, seeking his guidance, advisement, reputation, and labor to help develop and advance Loyakk U.K.'s ICO for Loyakk U.S.'s cryptocurrency-based business venture, the Vega Platform. *Id.* at 14. On or about April 14, 2018, Quasim and Plaintiff executed the Advisor Contract. *See* ECF 1 ¶ 17. Quasim was also one of two main points of contact in the context of Plaintiff's relationship with Loyakk U.K.; the other was Ali. *See* ECF 1 ¶¶ 21, 23, 24, 25, 26, and 31. To that end, Quasim exchanged and participated in various emails, phone calls, chat messages, and meetings with Plaintiff regarding a consultancy relationship with Loyakk and the Advisor Contract while Plaintiff was located in Wyoming. ECF 1 ¶¶ 14, 15, 16, 21, 23, and 32. Further, when it came to non-payment under the Advisor Contract, Quasim was so actively involved in discussions regarding Loyakk U.K.'s inability to pay at the time and willingness to pay in the future, Quasim orally promised Plaintiff payment under the Advisor Contract in the future. *Id.* at ¶ 32. Given Quasim's status as CEO of Loyakk U.K., the fact that Quasim's actions were committed in the context of his employment, and the fact that Quasim exercised significant

control and influence over Loyakk U.K. such that it was merely Quasim's alter ago, all of the aforementioned acts are attributable to Quasim.

For the reasoning explained below, the facts herein and those alleged in the Complaint, this Court has jurisdiction over Defendant Quasim. Defendant's Motion to Dismiss should be denied.

## ARGUMENT

In considering a motion to dismiss, this Court has regularly refused to grant such a motion unless it appears beyond doubt that the plaintiff could prove no set of facts supporting its claim which would entitle it to relief. *Meredith v. Health Care Products, Inc.*, 777 F. Supp. 923, 925 (D. Wyo. 1991) *citing Huxall v. First State Bank*, 842 F.2d 249, 250-51 (10th Cir.1988). Defendant has not and cannot offer any set of facts in support of his Motion to Dismiss.

### I.    This Court has Personal Jurisdiction over Defendant

Defendant seeks to dismiss the case on grounds that personal jurisdiction is lacking. Defendant's arguments are not well-taken. Courts in the Tenth Circuit assess two main requirements when determining if specific jurisdiction can be properly exercised over a defendant based on minimum contacts: (1) that the defendant has "purposefully directed his activities at residents of the forum," and (2) that the suit "arise[s] out of or relate[s] to those activities." *Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1221 (10th Cir. 2021) quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, (1985) (internal quotation marks omitted). Courts in the Tenth Circuit further require a showing that exercising jurisdiction in the circumstances would not otherwise offend "fair play and substantial justice" before exercising personal jurisdiction. *Id.*

Under the first prong, the analysis is quite simple. Defendant Quasim purposefully directed activities toward Plaintiff, a known resident of Wyoming, numerous times over the course of nine months in 2018. Quasim's activities included, but were not limited to various emails, phone calls,

chat messages, and meetings with Plaintiff regarding a consultancy relationship with Loyakk and the Advisor Contract while Plaintiff was located in Wyoming. ECF 1 ¶ 14, 15, 16, 21, 23, and 32. Courts in the Tenth Circuit have repeatedly held such acts sufficient to sustain personal jurisdiction over a defendant. *See Continental Am. Corp. v. Camera Controls Corp.,* 692 F.2d 1309, 1313-14 (10th Cir.1982) (holding that phone calls and letters may provide sufficient contacts for the exercise of jurisdiction); *Burger King*, 471 U.S. at 475 n. 18, ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction.") (internal citation omitted); *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir. 1988) (reasoning that "[i]n proper circumstances, even a single letter or telephone call to the forum state may meet due process standards"); *Burt v. Bd. of Regents of the Univ. of Neb.*, 757 F.2d 242, 245 (10th Cir. 1985) (finding minimum contacts based upon one letter alone). Thus, Plaintiff has sufficiently established that Quasim directed his activities at Plaintiff, a resident of Wyoming.

In addition, a defendant purposefully avails himself of the privilege of conducting business in a state where a defendant has "deliberately" engaged in significant activities within a state or has created "continuing relationships" or "obligations" between himself and residents of the forum state. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984); *Travelers Health Ass'n v. Virginia ex rel. State Corp. Comm'n*, 339 U.S. 643, 648 (1950); *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1277 (10th Cir. 2005). Defendant Quasim purposefully availed himself of the benefits and protections of Wyoming's law not only by holding meetings with and directing correspondence to Plaintiff, a known resident of Wyoming, but also by functioning as an alter ego of Loyakk U.K. which entered into the Advisor Contact and expressly agreed that Wyoming laws would govern related disputes. *See* ECF 1, Exhibit "5" at 4; *Burger King*, 471 U.S. at 482; *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445 (1952) (holding that activities

such as directors' meetings and business correspondence can be considered continuous and systematic activities); *Gramercy Distressed Opportunity Fund II, LP v. Bakhmatyuk*, No. 21-CV-223-F, 2022 BL 333022, at \*16 (D. Wyo. Sept. 15, 2022) *quoting Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 428 (10th Cir. 2006) ("We see no particular reason, at least in the international context, why a forum-selection clause, among the multitude of provisions in a contract, should be singled out as a provision not to be interpreted in accordance with the law chosen by the contracting parties.") The fact that the Advisor Contract not only provided for Wyoming law to govern, but also provided for venue in Wyoming further supports the fact that Quasim knew he was engaging with a citizen of Wyoming and that he was availing himself of the privileges and protections of Wyoming law.

Here, Defendant *wrongfully* applies the second prong of the standard for minimum contacts by requiring that there be proof that Plaintiff's claim arose *because of* Defendant's in-state conduct. However, the Supreme Court of the United States has expressly rejected this proposition. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1026 (2021) (holding that there is no precedent suggesting that only a "strict causal relationship between the defendant's in-state activity and the litigation will do.") Rather, the second prong requires that the suit "arise out of or *relate to"* the defendant's contacts with the forum. *Hood*, 21 F.4th at 1221 quoting *Burger King*, 471 U.S. at 472. Here, the actions attributable to Quasim were directed toward Plaintiff and plainly relate to the suit before the Court. Most, if not all, of Quasim's acts that were directed toward Plaintiff were related to the solicitation, negotiation, or performance of the Advisor Contract. Plaintiff's claims arise from and relate to performance under the Advisor Contract. Further, Quasim knew at the time of his wrongful conduct committed in connection with winding down Loyakk U.K. that the effects of his actions would be felt by Plaintiff.

In addition, notions of fair play and substantial justice would not be offended if the Court exercised jurisdiction over Defendant. Indeed, states afford immense importance to their "manifest interest in providing effective means of redress" for their citizens. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957). Further, Defendant propounds no argument that he or any other witnesses or evidence is immobile or otherwise unable to be transported to Wyoming such that his ability to defend the suit would be hampered if the Court exercises jurisdiction over it. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 301 (1980). Indeed, Defendant has hired local counsel and already begun defending the suit. Defendant does not raise any other special hardship he would suffer. As such, jurisdiction exercised by this Court would be fair and just.

Further, jurisdiction cannot be avoided merely because Defendant lacks a physical presence in Wyoming. *See Dudnikov v. Chalk v. Vermillion Fine Arts*, 514 F.3d 1063, 1070 (10th Cir. 2008) (holding that a sufficient showing of a defendant's minimum contacts does not require a showing of physical presence within the forum). Notwithstanding a lack of physical presence in Wyoming, Quasim purposefully directed his activities toward Wyoming such that he has sufficient contacts within the state and availed himself of the privileges of conducting business herein, thus this Court properly has specific personal jurisdiction over Defendant.

## II.    This Court has Subject Matter Jurisdiction Over the Disputes at Issue

### A.  The Matter in Controversy Exceeds $75,000

This court has subject matter jurisdiction over the parties as is plead in the Complaint because there is diversity[3] of citizenship among the parties and the value in controversy exceeds $75,000.

---

[3] Diversity of citizenship is not at issue as Plaintiff is a resident of Wyoming and Defendant admits in his Motion to Dismiss that he is and was, at all times relevant to this proceeding, a resident of California or the United Kingdom.

In considering a motion to dismiss for lack of subject matter jurisdiction, the amount in controversy has been satisfied when the plaintiff claims a sufficient sum in good faith, absent facts demonstrating to "a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938), superseded by statute on other grounds, Judicial Improvements and Access to Justice Act, Pub. L. No. 100-702 , Title X, § 1016 (c), 102 Stat. 4670 (1988)). Viewing the totality of facts from the Complaint in light most favorable to Plaintiff, the claims are adequately plead as will be discussed *infra,* such that theories of piercing the corporate veil, alter ego, and respondeat superior apply, thus permitting damages against Quasim.

While Defendant disputes the amount in question, it notes that the value of cryptocurrency is speculative and fluctuating. ECF 8 at 13-14[4]. In response, Defendant relies on *single* decision rendered earlier this year wherein a Delaware court applied the "New York rule" to determine the value of damages for merely a breach of contract claim. ECF 17-1 at 10-11. Defendant, however, mischaracterizes the rule applied. The Court in *Diamond Fortress Techs., Inc. v. EverID, Inc.,* applied the rule that damages for breach of contract are calculated at "the highest intermediate value within a *reasonable* time." 274 A.3d 287, 306 (Del. 2022) (emphasis added). While three months was been held to be a reasonable time in *Diamond*, it has <u>not</u> been set as a bright-line rule. Moreover, Defendant assesses Plaintiff's damages at $27,411.40. ECF 17-1 at 11. However, facts in dispute must be resolved in favor of the non-movant.

Defendant also fails to acknowledge that Plaintiff was also owed 0.5% of Loyakk U.K.'s total crypto float as part of his compensation at the end of Loyakk ICO. After Loyakk's ICO completed, Loyakk had raised $16.9 million from the sale of forty-eight million Loyakk tokens.

---

[4] Defendant Quasim has adopted in the full and incorporated by reference the arguments propounded by Defendant Ali in Ali's Motion to Dismiss as to subject matter jurisdiction.

*See* Adrian Barkley, *Loyakk Announces Huge Token Burn*, April 30, 2019 https://cryptodaily.co.uk/2019/04/loyakk-announces-huge-token-burn. Basic arithmetic demonstrates (0.5% of $16.9 million) that Plaintiff was (and is) owed a sum of at least $845,000 on the crypto float alone. Thus, Plaintiff has met the minimum pleading requirements in good faith.

Further, the inability of a plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. *St. Paul,* 303 U.S. at 289. Nor does the existence of a valid defense to the claim. *Id.* Rather, only when it is apparent from the face of the pleadings to a legal certainty that the plaintiff cannot recover the amount claimed or "if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, that his claim was therefore colorable for the purpose of conferring jurisdiction," the suit will be dismissed. *Id.* Dismissal here is not proper.

### B. The Claims Do Not Require the Court to Interfere with Internal Affairs of Foreign Corporations

Without supporting authority, Defendant concludes that this Court's consideration of the claims propounded requires the Court to interfere with the management of internal affairs of a corporation organized under the laws of another State. This argument is patently wrong. While the Complaint does address the dubious dissolution process of Loyakk U.K, it does not ask this court to rule on the validity of the process or to "second-guess the actions taken by Companies House." Rather, this information is included to enlighten the Court as to Quasim, his co-Defendants' actions and history of abusing the corporate form. Quasim's failure to explain how or why the Court would need to engage in such analysis is notable – that is because such analysis is not required to determine if Quasim or his co-Defendants are liable for the claims brought. Indeed, Defendant was part of negotiation process for the Advisor Contract, is well-aware that the parties agreed to the exclusive jurisdiction of Wyoming, and that the Advisor Contract would be governed and

construed in accordance with the laws of Wyoming, not the United Kingdom. Thus, the Court absolutely has jurisdiction to determine whether Plaintiff is owed funds by Quasim and his co-Defendants as their actions directed toward Wyoming began long before the dissolution of Loyakk U.K.

Quasim further offers a misplaced hypothetical in attempt to illustrate the possibility of conflicting judgments to discourage the Court from properly exercising jurisdiction. As nothing before this Court requires a determination as to validity of the dissolution process of Loyakk U.K., the issues raised in Defendant's hypothetical are moot. Rather, any application made by Loyakk U.S. or its co-Defendants to restore Loyakk U.K. to the Companies House Registrar would have no bearing on Plaintiff.

Instead, convenience, efficiency, and justice support this Court's exercise of jurisdiction over the matter as the plain express language of the Advisor Contract conveys jurisdiction over "any legal action or proceeding arising out of or concerning this Agreement…" *See* ECF 1 Exhibit "5" at 4.

## III.   <u>The Complaint Sufficiently Pleads Piercing the Corporate Veil</u>

Piercing the corporate veil is proper in the "furtherance of public policy or the ends of justice." *Opal Mercantile v. Tamblyn*, 616 P.2d 776, 778 (Wyo. 1980). In determining whether it is appropriate to disregard the corporate form for purposes of imposing alter ego liability, Court consider the following factors as applicable: (1) Undercapitalization of a one-man corporation, (2) failure to observe corporate formalities, (3) nonpayment of dividends, (4) siphoning of corporate funds by the dominant stockholder, (5) nonfunctioning of other officers or directors, (6) absence of corporate records, (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders, and (8) the use of the corporate entity in promoting injustice or fraud.

*Wegerer v. First Commodity Corp. of Bos.*, 744 F.2d 719, 730 (10th Cir. 1984) *quoting Sampson v. Hunt,* 665 P.2d 743, 747 (Kan. 1983).

In the case of Quasim, the Complaint sufficiently pleads these factors such that the Court should disregard Loyakk's corporate form and pierce the corporate veil. First, Loyakk U.S. and Loyakk U.K. both clearly have had issues with undercapitalization given their failure to pay taxes or compensate Plaintiff. *See Amfac Mech. Supply Co. v. Federer*, 645 P.2d 73, 79-80 (Wyo. 1982), abrogated on other grounds by *Tex. W. Oil & Gas Corp. v. First Interstate Bank of Casper*, 743 P.2d 857 (Wyo. 1987) (citing *Minton v. Cavaney,* 56 Cal.2d 576, (1961) and *Wyo. ex rel. Christensen v. Nugget Coal Co.*, 144 P.2d 944 (Wyo. 1944)) (stating that fraud is not required to disregard the corporate form where owners provide inadequate capitalization, actively participate in the conduct of the corporate affairs, and failing to do would otherwise return an inequitable result). The harm that Plaintiff continues to suffer obviously resulted, at least in part, from the undercapitalization of Loyakk U.S. and Loyakk U.K at the hands of Quasim. Second, Quasim as an officer of Loyakk was required as a fiduciary to act in the best interests of Loyakk. Instead, Quasim acted against the best interests of both Loyakk entities by failing to (a): adequately capitalize either Loyakk U.S. or Loyakk U.K., (b) pay taxes on behalf of Loyakk U.S. or Loyakk U.K., (b) cause performance to be completed on behalf of Loyakk U.K. under the Advisor Contract, and (d) compensate known creditors after the fact. *See Medina v. Four Winds Intl. Corp.*, 111 F. Supp. 2d 1164, 1169 (D. Wyo. 2000) (holding that a shareholder's diversion of corporate assets for his own benefit and to the detriment of creditors justifies piercing the corporate veil). Quasim, with Loyakk U.K. and Loyakk U.S. as his alter egos, used the corporate form as façade to achieve his own interests and promote injustice. In addition, the Complaint clearly alleges that the manner in which Quasim conducted Loyakk's business obscured which actions were

attributable to Loyakk U.K. or Loyakk U.S. *See Virgin Enter. Ltd. v. Virginic LLC,* No. 19-CV-0220-F, 2020 BL 577622, at *7, 9 (D. Wyo. Apr. 1, 2020) (piercing the corporate veil when it was reasonable to infer from allegations in the complaint that Defendants acted obscure which corporate defendants were behind various acts). Finally, out of the fifteen team members listed on Loyakk's website, Plaintiff only ever interacted with Quasim and Ali in connection with the Advisor Contract, thus evidencing non-function by other officers.

If the corporate form is not disregarded by this Court, Plaintiff will suffer irreparable harm given that Loyakk U.K. is no longer in existence. If the Court refuses to pierce the corporate veil under these circumstances, Plaintiff will not be able to otherwise recover funds owed to him for services rendered, an outcome that rewards Quasim and his co-Defendants not only for maliciously abusing the corporate form, but also for failing to notify and/or pay known creditors at the time of Loyakk U.K.'s dissolution.

Defendant in his Motion to Dismiss attempts to place himself at arms-length in terms of his association with Loyakk U.K by stating that all actions by Quasim were taken in the context of his employment for Loyakk U.K. However, his attempt to do is futile given that piercing the corporate veil in this case is more than appropriate.

The facts alleged in the Complaint plainly evidence the lack of individuality between Loyakk U.K. and Loyakk U.S. and further demonstrate that both companies were merely alter-egos of one another and Quasim. Despite Defendant's averment that the only evidence offered in support of Plaintiff's piercing the corporate veil theory is common management and cooperation between distinct entities, Plaintiff has alleged numerous other facts in support. For example, facts in support include, but are not limited to:

- Loyakk U.K. and Loyakk U.S. were affiliated entities. ECF 1 ¶¶ 2-3.;

- Loyakk U.S. and Loyakk U.K. were related by shareholdings, were under common ownership, confederated in their business affairs, or were otherwise controlled by Quasim and Ali. Loyakk U.S. and Loyakk U.K. operated under one brand to promote and solicit sales of Loyakk U.K.'s crypto-token to gain venture capital for the Vega Platform built and developed by Loyakk U.S. Loyakk U.K. and Loyakk U.S. both used the same logo, white paper, marketing material, and website address – www.loyakk.io – to promote Loyakk's ICO and Loyakk U.S.'s proprietary software. ECF 1 ¶¶ 4, 7;

- Defendants Ali and Quasim maintained a various officer and advisory positions at Loyakk U.S. as well as Loyakk U.K. ECF 1 ¶¶ 4, 7;

- Loyakk's website lists *both* Ali and Quasim as CEO and does not distinguish as to Loyakk U.S. or Loyakk U.K. thus blurring the roles of Ali and Quasim with respect to both companies. ECF 1 ¶ 7;

- Defendants Ali and Quasim do not distinguish between their roles at Loyakk US. and Loyakk U.K. on their social media, and repeatedly refer to "Loyakk" when discussing any aspect of business engaged in by Loyakk U.K. and Loyakk U.S. ECF 1 ¶ 7;

- Ali, the CEO of Loyakk U.S., is the individual who initially solicited Plaintiff's services, engaged in the negotiation of the Advisor Contract, and wanted to "move [the parties'] partnership." ECF 1 ¶¶ 14-16;

- In the context of the Advisor Contract, Plaintiff worked with Loyakk U.S. through its co-Defendants in seeking additional advisors/consultants and improving Loyakk's overall brand. ECF 1 ¶ 21;

- When concerns were raised about Plaintiff's performance under the contract, Plaintiff spoke with Ali and Quasim about how to improve the relationship ECF 1 ¶ 23;

- Loyakk U.S. was actively involved in discussions regarding Loyakk U.K.'s non-payment under the Advisor Contract and promised through Ali to pay Plaintiff in the future. ECF 1 ¶ 32.

Defendant's contention that there are no allegations in the Complaint that demonstrate he breached or substantially assisted other Co-Defendants in their breaches is also without merit. Viewing the facts in the light most favorable to Plaintiff, these facts demonstrate that Quasim and his co-Defendants intentionally and purposefully blurred the corporate distinctions between Loyakk U.S. and Loyakk U.K. in conducting their affairs. Defendant exercised significant control

over the management, influence, and governance of Loyakk U.K.'s business. As such, these facts undoubtedly establish the requisite criteria for piercing the corporate veil as to Defendant's liability and further support this Court's jurisdiction over Defendant. Thus, Defendant should not be permitted in one instance to disingenuously separate himself from the company when it serves him to avoid this Court's jurisdiction and in another instance to invoke protections of the corporate form to avoid personal liability. Defendant's Motion to Dismiss should be denied.

**IV.**     **All Claims are Adequately Plead Against Defendant**

Rule 8 of the Federal Rules of Civil Procedure require that a complaint must contain allegations sufficient to adequately give fair notice to a defendant of the claims against him. *See Christopher v. Harbury*, 536 U.S. 403, 416 (2002).

Defendant asserts that because Plaintiff has alleged piercing the corporate veil, he cannot be permitted to alternatively plead aiding and abetting theories. A simple reading of Rule 8 shows this is plainly incorrect. Rule 8 § (d)(2) states that: "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." To the extent that Defendant argues these theories are inconsistent, that also does not affect Plaintiff's right to assert them both in his pleading as the Rule 8 § (d)(3). Defendant's arguments in this regard miss the mark.

To the extent that Defendant argues that Wyoming has not recognized aiding and abetting as an independent cause of action, that does not restrict Plaintiff from alleging the same. Rather, *Quest Holco, LLC v. Scott Bushkie & Cornerstone Bus. Servs.*, Case No. 21-cv-0051, 2021 U.S. Dist. LEXIS 255388 *4 (D. Wyo. July 19, 2021) cited by Defendant actually argues that because the Wyoming legislature has adopted common law, on a motion to dismiss the Court must only

assess whether a "new" claim has been repealed by statute or is somehow inconsistent with Wyoming law. Wyoming has no such statute. However, aiding and abetting claims are not otherwise inconsistent with Wyoming law. In fact, Wyoming case law currently recognizes several aiding and abetting claims. See, e.g., *Gas Sensing Tech. Corp. v. New Horizon Ventures Pty Ltd as Tr. of Linklater Family Tr.*, 471 P.3d 294 , 298 (Wyo. 2020) (noting a counterclaim was brought for "aiding and abetting the wrongful actions of others"); see also *Jontra Holdings Pty Ltd v. Gas Sensing Tech. Corp.*, 479 P.3d 1222, 1229 (Wyo. 2021) (same). Thus, there is no reason to believe that Wyoming's highest court would not recognize aiding and abetting breach of contract or breach of implied covenant claims in the instant case.

Plaintiff has adequately plead aiding and abetting claims as independent causes of action to the extent Wyoming's highest court might require. Plaintiff avers throughout the Complaint that Quasim was an alter ego of Loyakk and conspired with and through his Co-Defendants in conducting Loyakk's business affairs. Further, the Complaint asserts that Quasim knew that his and his co-Defendants' wrongful conduct constituted breached of duties to Plaintiff. Notwithstanding, Defendant still substantially participated in: (a) failing to render compensation to Plaintiff (*see* ECF 1 ¶¶ 50-56); and (b) impeding Plaintiff's ability to render services ECF 1 ¶¶ 57-63. Adding insult to injury, Quasim falsely promised to pay Plaintiff for the sums owed under the Advisor Contract.

As to Plaintiff's unjust enrichment, negligence, and quantum meruit claims, Defendant states that because these claims seek recovery of the same loss based on the same facts, they must be dismissed. Here again, Defendant is attempting to have it both ways. Defendant argues that breach of contract claims preclude equitable claims against him, yet at the same time argues that it was not party to the contract such that Plaintiff cannot recover against him. Here again,

16

Defendant misinterprets the law since Plaintiff has the ability to plead claims in the alternative. The reasoning on which Defendant relies in *Roussalis v. Apollo Elec. Co.* 979 P.2d 493, 496 (Wyo. 1999) citing *Fox v. F & J Gattozi Corp.*, 672 N.E.2d 547 (Mass. App. Ct. 1996) which merely holds that Plaintiff cannot *recover* under both claims if they are premised on the same facts. Plaintiff should be permitted to prosecute his claims simultaneously until the finder of fact determines Defendant is liable under Plaintiff's breach of contract claims.

For these reasons, Plaintiff has pled all causes of action and legal theories against Defendant and Defendant's Motion to Dismiss should be denied.

### V.   <u>All Necessary Parties Are Named</u>

Defendant also argues that because iStrategies was mentioned in the Complaint and responsible for issuing tokens for Loyakk U.S.'s proprietary software that Plaintiff has failed to name a necessary party. ECF 8 at 24-24. Defendant's argument, however, fails to acknowledge the plain language of the sentence on which he relies from the Complaint and the Advisor Contract. Namely "a guarantee 0.5% of ***Loyakk's*** total crypto-token float upon the ICO Completion Date." Thus, Plaintiff was promised by Loyakk U.K. to receive a portion of its total crypto-token float. Defendant has offered no evidence to suggest that Loyakk did not maintain ownership of its own tokens. iStrategies' limited license to resell a portion of Loyakk's tokens does not render them a necessary party. Further, and for complete clarification, Plaintiff did not enter into any contract or other have any other independent business connection with iStrategies. Thus, the fact that Loyakk U.S. alleges to have properly disclaimed liability in a contract entered into with another non-party *a year before* Loyakk U.S. solicited a business relationship with Plaintiff is of no consequence. *See* ECF 9 at 5. Plaintiff is not mentioned in the Reseller Agreement and certainly could not have

been an intended beneficiary; Plaintiff did not know Defendant or its co-Defendants prior to spring 2018. (ECF 9 at Exhibit D.)

Notwithstanding the fact that iStrategies is *not* a necessary party, if Defendant wishes to move to join iStrategies, Plaintiff will not object. If the Court finds that iStrategies is a necessary party under Federal Rule of Civil Procedure Rule 19, then Plaintiff respectfully requests leave to amend the Complaint to add iStrategies as a party. As alleged in the Complaint in ¶¶ 8, 9, 10, and 46, on information and belief, iStrategies *Limited* is yet another relevant corporate entity with whom Defendants have played fast and loose by having iStrategies *Ltd* reincorporated and doing business under the virtually the same name after being stricken from the Company House register. ECF 1 at ¶¶ 8-9. Both of the iStrategies entities are controlled in major part by Quasim and share the same address. *Id.* In fact, Quasim formed iStrategies *Limited* as soon as iStrategies *Ltd* was stricken from the Companies House Register and before iStrategies Ltd. was even officially dissolved. *See* ECF 1 at ¶ 46 and Exhibit "18." Notably, this is not the only instance where Quasim has allowed companies that he controls to be compulsorily dissolved before forming "new" entities under the same name. The *same* conduct was committed with Loyakk U.K. (Loyakk Ltd.) in the *same* year. Not even one week after Loyakk U.K. was dissolved, Quasim formed another a "new" private liability company under the name Loyakk Limited at the same address. Loyakk Limited was ultimately voluntarily dissolved a little over one and half years after it was formed.

**VI.**   <u>**All Claims are Timely and Laches Does Not Bar Any Claims**</u>

All claims asserted by Plaintiff are timely and thus should not be dismissed. Defendant's laches argument is, *at best*, misplaced. First, all claims averred are within their applicable statute of limitations. Laches is a judicially created equitable principle, whereas statutes of limitations are legislative enactments. *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1207 (10th Cir. 2001).

When statute sets a limitations period, laches generally will not be invoked to shorten the statutory period. *Id.* at 1208 *citing Ikelionwu v. United States*, 150 F.3d 233, 238 (2d Cir. 1998). The Tenth Circuit has held that even when applying laches to equitable claims, for which the statute of limitations is borrowed from comparable actions at law, there is presumption that if the claims are brought within applicable statutes of limitations, the claims will not be barred absent extraordinary circumstances. *Id.* Further, mere lapse of time does not amount to laches. *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1338 (10th Cir. 1982) *citing Bradley v. Laird,* 449 F.2d 898, 902 (10th Cir. 1971). No such extraordinary circumstances exist here.

Moreover, whether a claim is barred by laches is a fact and circumstance driven inquiry. *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). Laches is not mere delay, but rather delay that works to disadvantage another. *Id.* Thus, to properly assert laches applies, Defendant must establish that: (1) there has been unreasonable delay in asserting the claim; *and* (2) Defendant has been *materially* prejudiced by that delay. *Id.*

Defendant offers no factual support in his Motion to Dismiss for laches to apply. First, Plaintiff became aware of *some* claims in 2018 when Defendant and his co-Defendants failed to render payment under the Advisor Contract. However, approximately one month after breaching the contract, Quasim and his co-Defendants made an oral promise to payment Plaintiff the sums owed, presumably, to avoid being sued. Plaintiff relied on this statement in good faith in not pursuing claims against Defendants sooner. It was not until approximately mid-May 2022, that Plaintiff even became aware that Loyakk U.K. was dissolved. At that time, it became apparent that Defendants had no intention of rendering Plaintiff the compensation owed to him. *See Lawrence Nat'l Bank v. Edmonds (In re Edmonds),* 924 F.2d 176, 181-182 (10th Cir. 1991) (reasoning that where a creditor lacks actual knowledge of debtor's wrongful conduct and debtors engage in

fraudulent settlement negotiations, Plaintiff has a colorable argument that laches should not apply). Thus, Defendant's contention that Plaintiff lied in wait because, out of professional courtesy, Plaintiff afforded Defendants additional time to render payment is not well-taken. Moreover, Defendant does not present *any* facts at all to suggest that he has been prejudiced in any way, let alone unduly prejudiced, by Plaintiff commencing this litigation at the time he did.

## **CONCLUSION**

For the aforementioned reasons, the Court should reject Defendant's request to apply the doctrine of laches as all claims are timely before the Court and Defendant has failed to demonstrate his requisite burden to establish otherwise. Plaintiff respectfully requests that:

1. Defendant's Motion to Dismiss be denied in its entirety, or in alternative if Defendant's Motion to Dismiss is granted, that Plaintiff be granted leave to amend the Complaint;

2. Plaintiff is granted reasonable attorney's fees and costs; and

3. Plaintiff is granted such other and further relief as the Court deems just and proper.

Dated: December 14, 2022

Respectfully Submitted,

*/s/ Robert V. Cornish, Jr.*
Robert V. Cornish, Jr.
Wyoming Attorney No.: 6-3898
**LAW OFFICES OF ROBERT V. CORNISH JR., P.C.**
680 South Cache Street, Suite 100
Jackson, WY 83001
Office: (307) 264-0535
Email: rcornish@rcornishlaw.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of December 2022, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing all parties registered for electronic filing via the CM/ECF system, as well as to Loyakk Ltd. by air mail to its last known business address, 86-90 Paul Street, London, England, EC2A 4NE.

/s/ Robert V. Cornish, Jr.